**DELTA TRAFFIC SERVICE, INC.; Oneida Motor Freight, Inc., Plaintiffs–Appellees,**

v.

**GEORGIA–PACIFIC CORPORATION, Defendant–Appellant.**

No. 621, Docket 89–9201.

United States Court of Appeals, Second Circuit.

Argued Nov. 30, 1990.

Decided June 7, 1991.

Joseph L. Steinfeld, Jr., Washington, D.C. (Robert B. Walker, John T. Siegler, Sims, Walker & Steinfeld, P.C., Washington, D.C., of counsel), for plaintiffs-appellees.

Betty Jo Christian, Washington, D.C. (Timothy M. Walsh, Dale C. Andrews, Steptoe & Johnson, Washington, D.C., Forrest K. Dahmer, Atlanta, Ga., of counsel), for defendant-appellant.

Before VAN GRAAFEILAND, WALKER, Circuit Judges, and DEARIE, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

Georgia–Pacific Corporation, the owner of a paper manufacturing plant in Gilman, Vermont, appeals from a summary judgment of the United States District Court for the District of Connecticut (Daly, J.) in favor of Oneida Motor Freight, Inc., a bankrupt motor carrier, and Delta Traffic Service, Inc., Oneida's collection agent. The judgment, in the amount of $106,004.70 plus interest, is for alleged underpayments of motor freight charges. Inasmuch as the judgment deals only with underpayments under Oneida's filed rates, it is affirmed. However, because the reasonableness vel non of the filed rates has not yet been determined by the ICC, and because Oneida is in Chapter 11 reorganization, we direct the district court to impound all payments under the judgment pending a decision by the ICC on the issue of reasonableness and the amount, if any, of reparation due Georgia–Pacific.

The pertinent facts are undisputed. Between 1983 and 1985, Oneida transported various commodities from Georgia–Pacific's Gilman plant at agreed rates that were

* United States District Judge for the Eastern District of New York, sitting by designation.

substantially lower than Oneida's filed tariffs, with the understanding that Oneida would amend its filed tariffs to correspond to the agreed rates. Although Oneida did not amend its tariffs as agreed, it billed Georgia–Pacific at the lower agreed rates. However, after Oneida filed for Chapter 11 reorganization in 1985, Oneida and Delta sent new invoices to Georgia–Pacific reflecting the differences between the filed rates and the agreed rates. Upon Georgia–Pacific's refusal to pay the new invoices, Oneida and Delta brought this action to recover the disputed amount.

Georgia–Pacific's answer contained a number of defenses, only one of which, the Second Defense, has any significance on this appeal. In that defense, Georgia–Pacific alleged that the collection of any amount in excess of the agreed rates would constitute an "unreasonable practice" within the meaning of 49 U.S.C. § 10701(a). Georgia–Pacific also alleged by way of counterclaim that Oneida's failure to file the agreed-upon rates entitled Georgia–Pacific to various forms of contractual and equitable relief.

Coincident with the service of its answer, Georgia–Pacific moved to stay the action and refer the controversy to the ICC for a determination as to whether plaintiffs' collection efforts were an "unreasonable practice" under section 10701(a). In an opinion reported at 684 F.Supp. 769, the district court held that the question of appropriate tariff rates did not require the expertise of the ICC or implicate issues of transportation policy, and denied Georgia–Pacific's motion. For substantially the same reasons, the district court later granted plaintiffs' motion for summary judgment. This was done in two steps. The court granted summary judgment on the issue of liability on June 12, 1989; it granted the motion on the issue of damages on October 30, 1989. Final judgment was entered on November 1, 1989.

Meanwhile, on June 14, 1989, the ICC announced that it would accept challenges to the reasonableness of motor carrier rates and practices without the court referral it previously had required. Prompted by this announcement, Georgia–Pacific petitioned the ICC on July 21, 1989 for a declaratory ruling that Oneida and Delta's collection of rates in excess of those that had been negotiated would be an unreasonable practice and that the higher filed rates Oneida and Delta sought were unreasonable. The ICC has not yet ruled on Georgia–Pacific's petition.

On June 21, 1990, the Supreme Court held in *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* —— U.S. ——, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), that the defense of "unreasonable practice" could not be asserted in a case such as the instant one, where a carrier insisted on payment of its filed rates despite an agreement to charge less. 110 S.Ct. at 2768–71. However, the Court specifically adhered to the traditional rule that filed rates are not enforceable if the ICC finds them to be unreasonable. *Id.* at 2767. Relying on this caveat, Georgia–Pacific now asks this court to vacate the judgment of the district court and remand the matter to that court "with instructions to permit [Georgia–Pacific] to pursue all rate reasonableness questions, including the referral of such questions to the ICC...." Oneida and Delta counter this request with the argument that Georgia–Pacific is now asserting a defense and seeking relief that it neither asserted nor sought in the court below. This, of course, is the same argument that Oneida and Delta made successfully to this Court in *Delta Traffic Serv., Inc. & Oneida Motor Freight, Inc. v. Appco Paper & Plastic Corp.,* 931 F.2d 5, 7 (2d Cir.1991), and on this issue there is little to distinguish the instant case from *Appco.*

The record below is replete with references to "unreasonable practice," the defense asserted in Georgia–Pacific's answer. Nowhere in the papers addressed to the district court is there any mention of unreasonable rates. Moreover, even though Georgia–Pacific's July 21, 1989 application to the ICC contained a somewhat summary request that the Commission determine that Oneida's filed rates were unreasonable, the district court was not informed directly of this fact. Indeed, in papers filed with the district court in connection

with Delta and Oneida's challenge to the propriety of the ICC application, both parties treated the application as addressed only to the issue of unreasonable practice.

However, when Georgia–Pacific filed its opposition to Delta and Oneida's second summary judgment motion, Georgia–Pacific stated in a footnote that it had made the July 21, 1989 application to the Commission and attached a copy of the application to its opposition statement. Had the district judge carefully read the attached application, he would have become aware of the fact that Georgia–Pacific was challenging the reasonableness of Oneida's filed rate as well as the reasonableness of its practice. Because there was no reason for the district judge to read carefully the ICC application so as to discover the almost casual request for a determination of rate reasonableness, a request that was not even mentioned in Georgia–Pacific's footnote, we will not charge the district judge with knowledge of that request.

On the other hand, the law is clear that a filed rate should not be enforced if it is unreasonable. *Maislin, supra,* 110 S.Ct. at 2767. Moreover, the ICC, not the court, decides whether the filed rate is reasonable. *Id.* (quoting *Arizona Grocery Co. v. Atchison, T. & S.F.R. Co.,* 284 U.S. 370, 384–85, 52 S.Ct. 183, 184, 76 L.Ed. 348, 352–354 (1932)); *Burlington Northern, Inc. v. United States,* 459 U.S. 131, 138–42, 103 S.Ct. 514, 519–22, 74 L.Ed.2d 311, 318–320 (1982). Because the issue of rate reasonableness was not, indeed could not be, raised in the district court, we will not undo everything that transpired in that court by vacating the judgment and remanding. The issue of rate reasonableness was presented to the Commission and remains to be decided. Should the Commission decide that Oneida's filed rates were reasonable, the case will not have to be retried. Should the Commission hold that Oneida's filed rates were unreasonably high, it may direct reparation of the excess payments. *Maislin, supra,* 110 S.Ct. at 2767; *Burlington, supra,* 459 U.S. at 141–42, 103 S.Ct. at 521–22; *Southern Pac. Transp. Co. v. San Antonio, Texas,* 748 F.2d 266, 272–73 (5th Cir.1984); 49 U.S.C. § 11705(b)(3).

A reparation order would be of little comfort to Georgia–Pacific, however, if Oneida was not in a position to comply with the order, and Oneida's status as a Chapter 11 debtor raises questions in this regard. We believe that, in fairness to Georgia–Pacific, its payments in satisfaction of the judgment below should be made to the district court and retained there until the ICC has decided how much, if any, should be repaid to Georgia–Pacific by way of reparation. Should there be an unreasonable delay in the making of that decision, Oneida may petition the district court for earlier release of the funds.

In sum, insofar as the judgment below deals with Georgia–Pacific's liability under Oneida's filed rates and rejects Georgia–Pacific's pleaded defenses and counterclaims, it is affirmed. However, payments in satisfaction of the judgment shall be deposited with the district court as above set forth pending a determination of rate reasonableness by the ICC or an order of disbursement by the district court based upon unreasonable delay in arriving at that determination.

So ordered. No costs to either side.