**PUERTO RICO MARITIME SHIPPING AUTHORITY, Petitioner,**

v.

**FEDERAL MARITIME COMMISSION and United States of America, Respondents.**

**Stanley Hecht, Intervenor.**

**No. 95–1643.**

United States Court of Appeals, First Circuit.

Heard Nov. 8, 1995.

Decided Feb. 6, 1996.

Amy Loeserman Klein, Washington, DC, with whom Jenkens & Gilchrist, was on brief, for petitioner Puerto Rico Maritime Shipping Authority.

Carol J. Neustadt, Attorney, Federal Maritime Commission, Washington, DC, with whom Robert D. Bourgoin, General Counsel, and C. Douglass Miller, Attorney, Federal Maritime Commission, and Anne K. Bingaman, Assistant Attorney General, John J. Powers III and Robert J. Wiggers, Attorneys, U.S. Department of Justice, were on brief, for respondents Federal Maritime Commission and United States of America.

Rick A. Rude, Washington, DC, for intervenor Stanley Hecht.

Nathan J. Bayer, Washington, DC, with whom Torbjorn B. Sjogren and Sher & Blackwell, were on brief, for amici curiae United States Atlantic and Gulf/Southeastern Caribbean Conference, United States Atlantic and Gulf Hispaniola Steamship Freight Association, Latin American Shipping Service Association, Venezuelan American Maritime Association and the Credit Agreement.

Before LYNCH, Circuit Judge,
CAMPBELL, Senior Circuit Judge, and
WATSON,* Senior Judge.

LYNCH, Circuit Judge.

May the Federal Maritime Commission, in exercising its administrative lawmaking function, excuse a party from paying sums awarded against it by a final judgment entered by a U.S. District Court and affirmed on appeal? We preserve harmony between the two systems of law and respect for judgments entered by the courts by concluding, on the facts of this case, that the party was not free before the agency to seek to undo the court judgment. Accordingly, we reverse the FMC's determination that Save–On Shipping (SOS) need not pay the attorneys' fees and costs awarded to Puerto Rico Maritime Shipping Authority (PRMSA) by the United States District Court for the Southern District of Florida and by the United States Court of Appeals for the Eleventh Circuit. To the extent that the FMC's order is prospective and does not involve sums awarded by the judgment entered, we affirm.

---

* Of the U.S. Court of International Trade, sitting by designation.

PRMSA carried four shipments of frozen food and other items to San Juan, Puerto Rico for SOS. When SOS refused to pay about $11,000 of PRMSA's bill, PRMSA began an action against SOS in the federal court in Florida seeking the unpaid freight charges, interest, collection costs and attorneys' fees pursuant to the terms of PRMSA's bill of lading to SOS.[1] Jurisdiction was under the maritime and admiralty jurisdiction of the federal courts, 28 U.S.C. § 1333. The bill of lading, which employed language found in a bill of lading tariff filed with the FMC, provided that:

> [t]he shipper, consignee, holder hereof, and owners of the goods shall be jointly and severally liable to Carrier for the payment of all freight, demurrage, General Average and other charges, including, but not limited to court costs, expenses and reasonable attorney's fees incurred in collecting sums due Carrier.

SOS moved for summary judgment; PRMSA filed a cross motion. SOS lost on both motions. The court awarded PRMSA the unpaid freight, attorneys' fees and costs, enforcing the terms of the bill of lading.

SOS moved for reconsideration and then for a stay of the district court proceeding while SOS pursued a complaint (FMC Docket No. 92–12) it had filed (after losing the summary judgment motions) before the FMC. That administrative complaint challenged, *inter alia,* the attorneys' fees provision of the tariff upon which the bill of lading was based, but did not directly challenge the attorneys' fees awarded on the four shipments at issue in the federal court action. It asserted that the attorneys' fees tariff provision was unreasonable under sections 17 and 18(a) of the Shipping Act, 1916, 46 U.S.C.App. §§ 816 and 817(a) (the 1916 Act), and section 2 of the Intercoastal Shipping Act, 1933, 46 U.S.C.App. § 844 (the 1933 Act). It involved seven shipments on which PRMSA had not sought freight collection in the court action. Because the shipments had occurred two years prior to the filing of the administrative complaint, SOS sought only

prospective relief in the form of cease and desist orders. SOS's motion for a stay of the district court proceedings was the first time that SOS argued before the district court that the attorneys' fees provision might be illegal or unreasonable and thus unenforceable because it was unilateral. The motion for a stay did not argue that the district court lacked jurisdiction over the attorneys' fees issue. Rather, recognizing that primary jurisdiction is a rule of "deference" and not of jurisdiction, it argued that primary jurisdiction was in the FMC. The district court denied both of SOS's motions.

SOS appealed the judgment to the United States Court of Appeals for the Eleventh Circuit and moved to stay the appellate proceedings or, in the alternative, to refer the case to the FMC under the doctrine of primary jurisdiction. The Eleventh Circuit denied the motion for stay. It later affirmed the district court, without opinion, and denied the motion for referral as moot. PRMSA was eventually awarded attorneys' fees and costs of approximately $100,000. The parties do not identify any further appeals taken by SOS in the federal court action pertinent here.

Having lost in federal court, SOS filed a second complaint before the FMC (FMC Docket No. 93–21) directly challenging the attorneys' fees awarded on the four shipments that were at issue in the Eleventh Circuit. This administrative complaint also alleged that the tariff and bill of lading language concerning attorneys' fees and costs was unlawful and unreasonable. It sought reparations pursuant to section 22(a) of the 1916 Act, 46 U.S.C.App. § 821(a), in the amount of attorneys' fees that were granted by the federal court. The FMC eventually consolidated FMC Docket No. 92–12 and FMC Docket No. 93–21 on the attorneys' fees issue.

The FMC agreed with SOS on the attorneys' fees issue. The FMC held that because the bill of lading tariff provision was

---

1. PRMSA's lawsuit in federal district court was filed by an agent of PRMSA, Puerto Rico Marine Management, Inc. (PRMMI), and the judgment in the federal court action ran in favor of PRMMI. Because the distinction between PRMSA and PRMMI is unimportant to the disposition of this petition, this opinion refers only to PRMSA.

unilateral (allowing the carrier, but not the shipper, to recover fees and costs), it was in conflict with an FMC decision, *West Gulf Maritime Ass'n v. Galveston*, 22 F.M.C. 101 (1979), and the provision was unjust and unreasonable. It granted SOS's relief in both FMC Docket No. 92–12 and FMC Docket No. 93–21. In so doing, it decided three issues of relevance here. It first rejected PRMSA's argument that claim preclusion barred the reparations claim in FMC Docket No. 93–21 as to the four shipments involved in the court action. It next ordered PRMSA to pay back as reparations in FMC Docket No. 93–21 any amount PRMSA collected in attorneys' fees pursuant to the federal court judgment. It also granted SOS's motion for summary judgment in FMC Docket No. 92–12 seeking a cease and desist order preventing PRMSA from publication and attempted enforcement of the provisions of FMC–F–No. 10 (the bill of lading tariff) and its bill of lading allowing for costs, expenses, and attorneys' fees.

PRMSA has petitioned here for review of the FMC's order. The FMC and the United States are respondents; Stanley Hecht, president of SOS, has appeared as an intervenor.[2] In its petition, PRMSA presses the claim preclusion argument it made before the FMC. It also claims that the FMC's decision on the merits of the attorneys' fees issue was error.

■ Because the question of claim preclusion is purely a matter of law within the expertise of the federal courts and is not a question within the particular expertise of the FMC, our review of that issue is plenary. *Cf. Dion v. Secretary of Health and Human Servs.*, 823 F.2d 669, 673 (1st Cir.1987). We also note the doctrine that "[j]udgments within the powers vested in courts by the Judiciary Article of the Constitution may not lawfully be revised, overturned or refused faith and credit by another Department of Government." *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948). Because we believe that FMC Dock-

et No. 93–21 was barred under principles of claim preclusion, we reverse the FMC's order with respect to FMC Docket No. 93–21 including its order granting reparations of the amount of attorneys' fees collected by PRMSA pursuant to the federal court action. We do not, however, believe that FMC Docket No. 92–12 was barred and, in light of our deferential review of the FMC's construction of a statute it administers, *see Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), we affirm the FMC's order in that case.

■ 1. *FMC Docket No. 93–21: The Reparations Claim.* Since the identity of the parties and the existence of a final judgment on the merits are not in dispute, the parties have focussed on whether there was sufficient identity between the causes of action actually litigated in the federal court action and the claim for reparations before the FMC. We do not enter the fray, as do the parties, for under the principle of claim preclusion, " 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in that action.' " *Manego v. Orleans Bd. of Trade*, 773 F.2d 1, 5 (1st Cir.1985) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) (emphasis supplied)), *cert. denied*, 475 U.S. 1084, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986); *accord Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 985 F.2d 1067, 1070 (11th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993).

■ The claims of unreasonableness, and hence, illegality, of the attorneys' fees provision in the bill of lading could have been raised as an affirmative defense in the action over which the district court plainly had jurisdiction. Although SOS could have raised unreasonableness as an affirmative defense and requested the district court to stay the action and refer the question to the FMC as a matter of primary jurisdiction, *see Holt Marine Terminal, Inc. v. United States Lines*, 472 F.Supp. 487, 489 (S.D.N.Y.1978);

2. PRMSA's suit in the district court was filed against both SOS and Stanley Hecht. Midway through the litigation, SOS represented that it had gone out of business, and the litigation was carried on only in the name of Stanley Hecht. In this opinion, "SOS" designates both parties.

*cf. P.R. Maritime Shipping Auth. v. Valley Freight Sys.,* 856 F.2d 546, 549 (3d Cir.1988) (referral to Interstate Commerce Commission), the decision to refer was within the discretion of the federal court. *Valley Freight Sys.,* 856 F.2d at 549. The doctrine of primary jurisdiction does not implicate the subject matter jurisdiction of the federal court. *Id.*

Normally, this would be the end of the matter. Under the transactional approach of the Restatement (Second) of Judgments § 24 (1980) applicable here, *see Manego,* 773 F.2d at 5; *see also Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544, 1551 (11th Cir.) (applying Restatement's transactional approach), *cert. denied,* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990), defendants can no more split defenses arising out of the same transaction or occurrence than plaintiffs can split claims. Even if SOS's reparations claim before the FMC is characterized as a counterclaim rather than an affirmative defense, it would not be a separate cause of action. The reparations claim, which is based on the very same four shipments at issue in the federal court collection action, clearly arose out of the same transaction or occurrence and virtually all of the facts necessary to the reparations claim would have formed the basis of a defense to the collection action. *Cf. Pirela v. Village of North Aurora,* 935 F.2d 909, 912 (7th Cir.), *cert. denied,* 502 U.S. 983, 112 S.Ct. 587, 116 L.Ed.2d 612 (1991).

Indeed, the required joinder of compulsory counterclaims, *see* Fed.R.Civ.P. 13(a) and Restatement (Second) of Judgments § 22, is designed to prevent parties from hiding behind formal distinctions between defenses and counterclaims. Under usual circumstances, SOS's reparations claim would be a compulsory counterclaim and SOS's failure to assert it in the federal court action would have barred it from bringing it in a subsequent action. *See id.*

The FMC urges that those usual rules should not apply, relying on the opinion in *Government of Guam v. American President Lines,* 28 F.3d 142 (D.C.Cir.1994). That case held that there is no express or implied cause of action in federal district courts over reparations claims brought under either the 1916 Act or the 1933 Act.[3] The argument goes that SOS cannot be barred from pursuing a reparations action that could not have been brought in the federal district court. That argument begs the question. The issue here is whether principles of claim preclusion bar the assertion of a claim before an agency which is based on a legal theory that could have been raised by way of defense to the district court claim and which, if it had been raised, could have provided the same relief.

■ A defendant is barred from relitigating a defense which was available in a prior action by making it the basis of a claim that would "nullify the initial judgment or would impair rights established in the initial action." Restatement (Second) of Judgments § 22(2)(b). A defendant's failure to raise such a defense precludes the defendant from seeking restitution of the amount that may have been awarded to the plaintiff in the first action. *Id.* cmt. b & f, illus. 2, 3, 9. The reparations action SOS seeks in this case is precisely the type of restitutionary remedy that, under this rule, is barred. Were SOS to be allowed a reparations remedy, the district court's award of attorneys' fees would be rendered totally meaningless and there

**3.** In *Government of Guam* the shippers first initiated an action before the FMC against carriers for reparations for rates alleged to be unlawful under the 1916 and 1933 Acts. The shippers later filed a virtually identical claim in federal court which the court dismissed. The D.C. Circuit affirmed the dismissal. The shippers conceded that the FMC had the task of resolving the merits of the dispute, 28 F.3d at 144, and there was no private cause of action expressly provided in the 1916 and 1933 Acts for a shipper to challenge a carrier's rates in federal court. The shippers sought to continue the court action in order to preserve ultimate claims of a class,

claims which the FMC could not hear, and argued there was an implied cause of action. The D.C. Circuit declined to imply a cause of action.

In contrast, here, the carrier had a cause of action that was properly before the federal court. There is little reason to think the *Government of Guam* court intended to resolve a dispute of the sort faced on the facts here. Indeed, in a separate part of the opinion, the *Government of Guam* court declined to give the shippers relief from the consequences of their failure to have raised certain legal theories in the district court. *Id.* at 149–50.

would be a concomitant waste of judicial resources. We hold that SOS's claim for reparations before the FMC is barred.

The policies of economy, efficiency, repose and fairness underlying the claim preclusion doctrine are best served by holding SOS to the consequences of its actions and inactions. Under the facts of this case, SOS had a full and fair opportunity to litigate the attorneys' fees issue before the district court.[4] Although it had an opportunity to do so, SOS neither raised the reparations claim before the federal court nor argued that there was no jurisdiction over the attorneys' fees issue. SOS, as a result, gains no benefit from any jurisdictional competency or "formal barrier" exception to the doctrine of claim preclusion. *Cf.* Restatement (Second) of Judgments § 26(1)(c). Further, the *Government of Guam* outcome was not supported by precedent in the Eleventh Circuit nor is it binding on that circuit. Indeed, the FMC itself has in the past taken the position that federal courts have concurrent jurisdiction over reparations claims brought under section 22 of the 1916 Act and that a reparations counterclaim could be raised in federal district court. *See Interconex, Inc. v. Federal Maritime Comm'n,* 572 F.2d 27, 30 (2d Cir.1978).

There is virtually no practical difference between the relief SOS could have received before the district court and what it sought before the FMC. The legal theory—the unreasonableness of the unilateral attorneys' fees provision—was available to SOS in the district court action. The extent of the relief sought—relief from payment of the attorneys' fees—was available in the district court.

The purely formal distinctions on which FMC and intervenor uneasily rest have met with considerable hostility when used as attempts to avoid claim preclusion. For example, parties who have failed to raise fraud and forgery defenses in state court actions have been barred from bringing RICO claims in federal court based on allegations of fraud

and forgery even where jurisdiction over the RICO claim may have been exclusively federal. *See, e.g., Henry v. Farmer City State Bank,* 808 F.2d 1228, 1236–37 (7th Cir.1986); *cf., also, Pirela,* 935 F.2d at 912. The underlying rationale is that claim preclusion applies if the formal barriers did not prevent the party from a full and fair opportunity in the first action to litigate the substance of the legal theory advanced and remedy sought in the second action.

Finally, the results reached here with respect to the reparations action are not outweighed by concerns over the 1916 and 1933 Acts' statutory scheme. *Cf., e.g., United States v. American Heart Research Found., Inc.,* 996 F.2d 7, 11 (1st Cir.1993) (claim-splitting limitation relaxed where applying it would frustrate a statutory objective). A different factual setting might more strongly involve the policies behind the 1916 and 1933 Acts, but this is basically an action between two private parties over who will bear the costs and fees of the collection action here. In order to collect $11,000 in freight charges, an amount SOS says it has now paid and does not dispute, PRMSA was forced to spend over $100,000 in attorneys' fees. That Congress may have preferred that the FMC decide questions of the reasonableness of attorneys' fees provisions in carrier tariffs does not justify upsetting the strong policy of honoring final judgments entered by federal courts. *Cf. Plaut v. Spendthrift Farm, Inc.,* —— U.S. ——, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (retroactive legislation which reverses a judgment within the power vested by the courts is unconstitutional as a violation of separation of powers). Nor does it excuse compliance by litigating parties with general rules of federal claim preclusion.

SOS had a range of actions available, which it chose not to follow, that would have accommodated the interests of both the judicial and administrative systems. Before SOS was sued, it could have paid PRMSA's bill

---

4. A defendant must, of course, have a full and fair opportunity to raise the claim in the first action. In the analogous situation of plaintiffs' claim splitting, for example, the Restatement recognizes that the first court must have been competent to adjudicate the claim. *See* Restatement (Second) of Judgments § 26(1)(c); *see also id.* § 22(2) (claim preclusion over counterclaims is limited to claims that the defendant "may [have] interpose[d]" as a counterclaim in the first action).

and the fees and then brought an action before the FMC for reparations. Alternatively, once sued, SOS could have asserted an affirmative defense of illegality and/or brought a reparations counterclaim in district court and sought a ruling on the question of whether there was subject matter jurisdiction over the reparations counterclaim. It could also have brought a timely action in the FMC and it could have asked in a timely fashion for a stay of the district court action or a primary jurisdiction referral. It could also have asked the district court to make its decision without prejudice to pursuing the reparations claim before the FMC. *See* Restatement (Second) of Judgments § 26(1)(b).

On these particular facts and equities,[5] the FMC's decision that SOS was free to avoid claim preclusion and thus the federal court judgment against it on the four shipments for costs and attorneys' fees is, we believe, in error and is reversed.

2. *FMC Docket No. 92–12: Cease and Desist Orders.* The issues raised by the appeal from the other administrative complaint are different, as is the outcome. As PRMSA states in its brief, the seven shipments at issue in FMC Docket No. 92–12 were never part of the federal court action brought by PRMSA. Even if these seven shipments arose out of the same transaction or occurrence (which is unclear on the record before us), as they must for PRMSA successfully to assert claim preclusion, the bar would work against PRMSA. PRMSA would then have split its claim and would be barred from suing on the seven shipments. A defendant

has no obligation to raise affirmative defenses to claims that have not been brought against it. *Cf.* Restatement (Second) of Judgments § 22 cmt. b.

■ The pertinent statutes are silent on the merits of whether the attorneys' fee provision in PRMSA's tariff and bill of lading was unreasonable because it was unilateral. We defer to the expertise of the FMC on the issue. *See Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82. Section 18(a) of the 1916 Act provides that carriers will enforce "just and reasonable" tariffs and practices relating thereto. 46 U.S.C.App. § 817(a). The FMC, which administers the 1916 Act, is charged with deciding whether a carrier's tariff and bill of lading is "just and reasonable." In light of the fact that these provisions are ubiquitous and shippers have no meaningful ability to avoid the provision, the FMC held that the attorneys' fees and costs provision was not just and reasonable under a prior analogous FMC decision, *West Gulf Maritime Ass'n. v. Galveston,* 22 F.M.C. 101 (1979) (holding unreasonable under section 17 of the 1916 Act an attorneys' fees provision that allowed a terminal operator, but not a user, to collect attorneys' fees). We recognize that, *West Gulf* notwithstanding, two of the FMC's commissioners dissented from the decision at issue here and that the question of unreasonableness of the attorneys' fees provision is by no means free from doubt. But the FMC's construction of the statute appears to be permissible. *See Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82. We

5. The result reached here coincides with the results reached in *Delta Traffic Serv., Inc. v. Georgia–Pacific Corp.,* 936 F.2d 64 (2d Cir.1991), which addressed the jurisdictional relationship between the federal courts and the Interstate Commerce Commission (ICC) over rate reasonableness issues. In that case, the Second Circuit denied requests to remand the case to the district court to assert rate reasonableness defenses that were not raised in the district court, but stated that Georgia–Pacific could nevertheless continue to pursue a reparation action based on rate unreasonableness before the ICC. *See id.* at 66. In *Georgia–Pacific,* however, Georgia–Pacific requested a stay of the district court action and a referral to the ICC "[c]oincident with the service of its answer" in the federal action. *Id.* at 65. Moreover, the rate reasonableness issue was pending before the ICC before judgment entered

in the federal court action. Aware of the ICC action, the Second Circuit carefully limited the scope of its decision, which may have restricted any claim preclusive effects it might otherwise have had. *Id.* at 66; *see* 18 Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 4413 (1981). *Georgia–Pacific* does not stand for the proposition that a party may collaterally attack a federal court's final judgment by raising before an agency a claim based on a defense that could have been, but was not, raised in the federal court. Indeed, in a similar case the Second Circuit had earlier refused to undermine a federal district court judgment based on a rate unreasonableness defense raised for the first time on appeal. *See Delta Traffic Service, Inc. v. Appco Paper & Plastics Corp.,* 931 F.2d 5, 7 (2d Cir.1991).

therefore affirm the FMC's order insofar as it relates to FMC Docket No. 92–12.

### Conclusion

The judgment of the FMC is *reversed* in part, *affirmed in part,* and *remanded* with directions that the FMC dismiss FMC Docket No. 93–21 and modify its order in accordance with this opinion. Parties to bear their own costs on appeal. *It is so ordered.*