Beckley v. DiGeronimo                 CV-96-194-JM P  09/17/96

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**

Beckley Capital Limited
Partnership

    v.                                    Civil No. 96-194-JM

Elizabeth Ann DiGeronimo,
Executrix of the Estate of
Anthony L. DiGeronimo


**O R D E R**


In this diversity action, plaintiff Beckley Capital

Limited Partnership sues defendant Elizabeth Ann DiGeronimo, in

her capacity as executrix of the estate of Anthony L. DiGeronimo,

on a written guaranty Beckley purchased from the Federal Deposit

Insurance Corporation (FDIC).  Presently before the court are the

parties' cross-motions for summary judgment.  The motions raise,

inter alia, a novel and interesting question as to whether this

action is time-barred.  For the reasons that follow, the court

rules the action time-barred and orders that judgment be entered

in defendant's favor.

I.

The facts pertinent to the court's analysis are

undisputed.  On August 15, 1988, Biotech Realty Trust borrowed

$700,000 dollars from the Bank of New England - Worcester (BNE),

giving BNE a mortgage on a commercial building Biotech owned in

Leominster, Massachusetts. Anthony DiGeronimo provided a written guaranty of the note underlying this transaction at the time the note was made.

On January 6, 1991, BNE went into receivership and the FDIC succeeded to its assets. Sometime thereafter, Biotech defaulted on the note. On March 16, 1994, pursuant to an agreement (particular details and legal effects of which are hotly disputed but not here relevant) reached with RECOLL Management Corporation, which was administering certain of BNE's assets on behalf of the FDIC, Biotech sold the Leominster building and applied the sale proceeds to its indebtedness. The proceeds were sufficient to retire all but $194,661 of Biotech's obligation under the note.

On June 9, 1994, the FDIC sold the note, the guaranty, and all remaining indebtedness associated therewith to Beckley. Six weeks later, on July 23, 1994, Anthony DiGeronimo died testate. On October 13, 1994, DiGeronimo's will was allowed by the Rockingham County Probate Court, and Elizabeth Ann DiGeronimo, DiGeronimo's widow, was appointed executrix of DiGeronimo's estate. On April 11, 1996, Beckley filed the instant action, which seeks to recover the note deficiency from DiGeronimo's estate under DiGeronimo's 1988 written guaranty.

2

II.

If this were an ordinary diversity action, it would clearly be time-barred. Both Massachusetts and New Hampshire (and there is no dispute that either Massachusetts or New Hampshire law applies to this question) have so-called "non-claim" statutes which, generally speaking, prohibit the bringing of actions against estate administrators more than one year after the date of death (in the case of Massachusetts) or the date of the original grant of administration (in the case of New Hampshire). See Mass. Gen. L. Ann. ch. 197, § 9 (1990); N.H. Rev. Stat. Ann. § 556:5 (1974). The purpose of and important state interests served by such statutes are readily inferable: the expeditious transfer of estate property to a decedent's heirs and the prompt closing of estate administrations. See, e.g., Hanna v. Plumer, 380 U.S. 460, 462 n.1 (1965) (describing substantive purpose of the Massachusetts statute); Coffey v. Bresnahan, 127 N.H. 687, 693 (1986).

Beckley does not contest that the instant action was brought beyond the deadlines set by each statute. Relying primarily on authority which indicates that (1) the FDIC, if it still owned the note, would not be subject to the state non-claim statutes here at issue; and (2) assignees of instrumentalities transferred by the FDIC are entitled, under the Financial

3

Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), to certain rights and protections to which the FDIC is entitled but to which the assignees, as private litigants, ordinarily would not be, Beckley instead contends that it, as the FDIC's assignee, is entitled to avoid application of the non-claim statutes. The court thinks that such a ruling, under the facts of this case, would unduly trammel significant state interests in favor of a remote and speculative federal interest.

Preliminarily, the court acknowledges the apparent correctness of Beckley's first premise: that the FDIC would not be barred from bringing this claim if it still owned the guaranty. See United States v. Summerlin, 310 U.S. 414, 416-18 (1940) (Florida non-claim statute does not bar claim brought on behalf of the United States by the Federal Housing Administrator; it "transgresse[s] the limits of state power" for a state non-claim statute to invalidate a claim of the federal sovereign). And it will assume arguendo the correctness of the other rulings on which Beckley relies. As a result, the court will assume that, at the time it bought the guaranty, Beckley inherited the FDIC's entitlement to bring this action within six years of Biotech's default. See 12 U.S.C. § 1821(d)(14)(A)(i) and (B)(ii); see also, e.g., FDIC v. Bledsoe, 989 F.2d 805, 811 (5th Cir. 1993) (assignee of FDIC note entitled to invoke six-year

4

federal statute and not subject to Texas' four-year statute); Remington Investments, Inc. v. Kadenacy, 930 F. Supp. 446, 449-51 (C.D. Cal. 1996) (similar); Mountain States Financial Resources Corp. v. Agrawal, 777 F. Supp. 1550, 1552 (W.D. Okla. 1991) (similar); but see WAMCO, III, Ltd. v. First Piedmont Mortgage, 856 F. Supp. 1076, 1085-88 (E.D. Va. 1994) (Virginia's five-year statute of limitations applied to a claim on a demand note assigned to plaintiff by the Resolution Trust Corporation). So too is the court aware that various other rights and entitlements pass to assignees of assets acquired by the FDIC in its receivership capacity. E.g., Northeast Community Development Group v. FDIC, No. 92-236-JD (D.N.H. filed June 6, 1995) (FDIC assignees are entitled to invoke both the D'Oench, Duhme doctrine and the related defenses found at 12 U.S.C. § 1823(e)).

For good reason, Beckley does not broadly argue that it inherited all rights to which the FDIC would be entitled if it had retained possession of the guaranty. The implications of such an argument are simply too intrusive on state sovereignty to withstand a federalism-based challenge. In the court's view, Beckley could not seriously contend, for instance, that 12 U.S.C. § 1819(b)(2)(A) confers upon it a right to sue non-diverse parties on FDIC-transferred instrumentalities in federal court. Nor, with respect to such instrumentalities, could it lay claim

5

to the FDIC's expansive subpoena power, which is set forth at 12 U.S.C. § 1818(n). Nor, for one final example, could it collect on the guaranty if it had reason to know that BNE had initially procured it through fraud or that the FDIC fraudulently continued to treat it as viable when, in fact, it had released DiGeronimo from his obligations thereunder. Compare Michelin Tires (Canada) Ltd. v. First Nat'l Bank of Boston, 666 F.2d 673, 680-82 (1st Cir. 1981) (indicating that an assignee with notice of fraud assumes the liability of a fraud-committing assignor) (applying Massachusetts law) with Langley v. FDIC, 484 U.S. 86, 90-96 (1987) (unless the preconditions of 12 U.S.C. § 1823(e) are met, the FDIC may recover on any asset to which it obtains title in its receivership capacity, even, for example, if it knows that the asset initially was procured through fraud).

Beckley's argument is more appropriately limited. Beckley posits a tension between the six-year federal limitations period it inherited as the FDIC's assignee of the guaranty and the much shorter periods found in the non-claim statutes, and then argues that the federal statute must trump the "conflicting" state statute. The problem with this, though, is that the two statutes are not in conflict. The non-claim statutes are not general limitations statutes that might be seen as analogous to the relevant provisions of 12 U.S.C. § 1821 but containing

6

shorter provisions; they are an entirely different type of statute which become applicable only in a context simply not contemplated by § 1821 -- i.e., the death of a person against whom a claim lies. They therefore conflict with § 1821 no more than they conflict with the longer limitations periods which obtain against living claimees in their respective states. But cf. Davis v. Britton, 729 F. Supp. 189, 191 (D.N.H. 1989) (suggesting in dicta that the New Hampshire non-claim statute "appear[s] to be in conflict" with the longer federal maritime tort statute of limitations).

It is for this reason that, in Summerlin, the Supreme Court did not treat the problem as one involving conflicting, potentially applicable statutes. Instead, the Summerlin Court focused on the fact that the federal sovereign, as party plaintiff, stood to lose a claim under state law though the claim was still viable under federal statutory law. In the Court's view, settled authority prevented this from happening. See 310 U.S. at 416 ("[T]he United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights.") (citations omitted). Obviously, this party-focused line of cases has no direct application in this litigation, as the United States government is not a litigant.

The court is left, then, to consider two remaining

7

factors, only the first of which is actually argued by Beckley. Beckley casually suggests that application of the non-claim statutes might pose a preemption problem. Cf. Davis, 729 F. Supp. at 192 (Congress's comprehensive federal maritime tort scheme preempts potentially applicable state law, including state non-claim statutes). This argument lacks merit, as nothing in FIRREA suggests an intent to occupy the field with respect to lawsuits over commercial instrumentalities. See id. at 191 (In deciding preemption questions "[a]bsent an express intention by Congress, courts must consider the federal scheme of legislation, the role of the states in that scheme, and whether the field of legislation is one in which the federal interest is so dominant 'that it precludes enforcement of state laws on the subject.'") (quoting Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982)).

The remaining consideration is whether the federal interest in allowing Beckley to proceed with this action is so strong that the court should analogize this situation to those, referenced supra, where courts, relying on some strong federal interest, have inferred from FIRREA an intent that FDIC assignees enjoy its benefits. One problem with employing such an approach is that, for reasons already explained, the FDIC's ability to avoid the non-claim statutes does not derive from FIRREA's

8

statute of limitations (which the court presumably could broadly construe as protecting Beckley here); it derives from the common law principle that no state limitations period (including those found in non-claim statutes) can deprive the United States of a claim that remains viable under federal law.

Moreover, even if this common law principle could, in the face of a strong federal interest, be applied when assignees of claims formerly held by the United States assert those claims, the court is convinced that the balance does not weigh in Beckley's favor in this case. It would be one thing if DiGeronimo had died prior to the FDIC's sale of the guaranty. In such a situation, the federal interest in promoting a market for notes and guarantees the FDIC acquires when federally insured banks fail might well be strong enough for courts to allow the FDIC's already accrued right to avoid state non-claim statutes to pass to the FDIC's assignee. This, in turn, would create a market for a guaranty that would otherwise be worthless to private litigants because of an already expired, or about-to-expire, non-claim limitations period. Cf. Bledsoe, 989 F.2d at 811 (explaining market-creating rationale behind allowing assignees of FDIC notes to sue under the six-year federal statute of limitations and to avoid application of shorter state limitations periods). But, as the Fifth Circuit has recognized,

9

this federal interest diminishes significantly where, as here, the event triggering the running of the state limitations period occurs <u>after</u> the note or guarantee has passed to the assignee. <u>See</u> <u>Cadle Co.</u> v. <u>1007 Joint Venture</u>, 82 F.3d 102, 106 (5th Cir. 1996) (declining to extend <u>Bledsoe</u> to situations where the note goes into default only <u>after</u> it has passed to the assignee). As Judge Higginbotham explained:

> [M]arket concerns . . . are sharpest when a note held by the FDIC is in default, since such a note has no value to a prospective transferee whose claim on it would be time-barred under state law. This reasoning loses force with a note performing when the FDIC transfers it; because such a note is not in default, it has value to a prospective transferee and no limitation period is running. A market thus exists for such a note without an extension of FIRREA's limitations period to an assignee of the FDIC. Though [plaintiff] may be correct that a performing note will tend to have a slightly higher value if it carries with it FIRREA's longer limitations period, such a "more money" argument does not by itself mandate that we read FIRREA as displacing an otherwise applicable state statute of limitations.

<u>Id.</u> (citation omitted).

So it is here. At the time the FDIC transferred the guarantee to Beckley, DiGeronimo was alive and no state non-claim limitations period was running. At that point in time, therefore, the value of the guarantee was no more likely to have been affected by the potential applicability of any non-claim statute than any other note or guarantee on the market. To be sure, this court, like the Fifth Circuit, can see that notes and

10

guarantees of this sort might be more valuable if assignees inherited even unaccrued rights and entitlements of the FDIC at the time of transfer; there is little doubt, after all, that a note or guarantee that carries with it the right to avoid non-claim statutes that might become applicable in the future; or the right to file suit in federal court; or the right to invoke an extraordinary subpoena power; or the right to overbear fraud-based defenses, would be more highly valued by potential purchasers than ordinary notes or guarantees which carry no such rights.  In the court's view, however, the federal interest in whatever additional revenue such right-encrusted notes and guarantees would net does not outweigh the state interests that would be infringed by such a rule.  Simply stated, it would be an affront to federalism for courts to treat any party that happens to sue on a note or guarantee that the FDIC previously owned as if that party were the FDIC.  In the court's view, such would be the implication of a ruling that Beckley can avoid the non-claim statutes in this case.

III.

For the reasons stated, the court denies plaintiff's motion for summary judgment (document no. 6) and grants

11

defendant's cross-motion for summary judgment (document no. 8). The Clerk is directed to enter judgment in defendant's favor forthwith.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: September 17, 1996

cc: Frank P. Spinella, Jr., Esq.
    Thomas J. Pappas, Esq.

12