DiGeronimo v. FDIC                    CV-97-117-JD  03/23/98
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Elizabeth Ann DiGeronimo

        v.                              Civil No. 97-117-JD

Federal Deposit Insurance
Corp., et al.


                              O R D E R


     The plaintiff, Elizabeth Ann DiGeronimo, in her capacity as

executrix of the estate of Anthony L. DiGeronimo, brought this

action seeking equitable relief in the form of specific

performance against the Federal Deposit Insurance Corporation

("FDIC"), or alternately, against Beckley Capital Limited

Partnership ("Beckley").  Before the court now are the motions to

dismiss of the FDIC (document no. 9) and of Beckley (document no.

8).



                           Background[1]

     On August 25, 1988, Biotech Realty Trust, ("Biotech"),

executed a mortgage note (the "note") in favor of the Bank of New

England - Worcester, in the principal amount of $700,000.  The

note was secured by a mortgage on Biotech's commercial building

_____

        [1]The facts described herein are either undisputed or alleged
by the plaintiff.

in Leominster, Massachusetts (the "property").  Anthony DiGeronimo, Nunzio Lattanzio, and Robert Hakala executed personal guaranties of Biotech's obligation under the note.

In 1991, the FDIC was appointed receiver of the Bank of New England - Worcester, and succeeded to the bank's interest in the note and the guaranties.  The note and the guaranties were administered on behalf of the FDIC by RECOLL Management Corporation ("RECOLL").  Biotech and DiGeronimo negotiated with RECOLL to either renew the note or to sell the property with a "short payoff" of the outstanding balance on the note.  RECOLL obtained a foreclosure judgment in a Massachusetts state court and prepared to foreclose.  A release price of $292,442 was set by RECOLL.  Biotech and DiGeronimo proposed that they facilitate the sale of the property for $450,000, and that the net proceeds from the sale be applied to the outstanding balance on the note in exchange for a discharge of the mortgage and the release of the guarantors.  RECOLL allegedly accepted the proposal with the requirement that the guarantors provide full financial disclosures.

Biotech and DiGeronimo agreed to these additional terms and an alleged "agreement or an accord and satisfaction" was reached which replaced DiGeronimo's original obligation under the note and guaranty.  See Compl. at 3.  The release of DiGeronimo from

2

personal liability was made an express condition of the purchase and sale agreement with the buyer of the property. DiGeronimo provided RECOLL with the required financial disclosure. In February 1993, Alan Byrne, an account officer of RECOLL, recommended that the sale go forward, that the proceeds be applied to the balance on the note, and that DiGeronimo be released from his personal liability under the guaranty. Final approval of the transaction was granted on March 16, 1994, conditioned on the FDIC's receipt of net proceeds from the sale of $482,257. In reliance on Byrne's assurances that the discharge and release of DiGeronimo had been approved by all requisite authorities of RECOLL and the FDIC, and that a written discharge and release would be provided, Biotech proceeded with the closing and DiGeronimo paid additional consideration to reach the FDIC's required net proceeds figure.

Despite assurances of Byrne and RECOLL's attorney Joseph Shea that a written release would be forthcoming, DiGeronimo never received one. On June 9, 1994, the FDIC sold the note and DiGeronimo's guaranty to Beckley. On July 23, 1994, DiGeronimo died testate. Elizabeth Ann DiGeronimo, his widow, was appointed as executrix of his estate.

On April 11 or 12, 1996, Beckley filed an action against DiGeronimo's estate seeking to recover the note deficiency under

3

DiGeronimo's 1988 written guaranty.  See Beckley Capital Ltd. Partnership v. DiGeronimo, 942 F. Supp. 728, 729 (D.N.H. 1996). On the plaintiff's motion for summary judgment, the court found that Beckley's claim was time barred, and dismissed the action. See id. at 731.

On March 13, 1997, the plaintiff filed this action seeking an order from the court compelling the FDIC, or alternately Beckley, to specifically perform and issue a written release on behalf of the estate from "any and all obligations Anthony L. DiGeronimo had under [the] Guaranty."  Compl. at 1.  The FDIC has filed a motion to dismiss asserting that:  (1) the court lacks subject matter jurisdiction as the plaintiff has failed to exhaust the receivership claims process set forth in 12 U.S.C. § 1821(d)(3)-(13); (2) venue is improper in the District of New Hampshire; (3) the court lacks subject matter jurisdiction to grant the relief sought - specific performance, pursuant to 12 U.S.C. § 1821(j); and (4) in the event the action is brought against the FDIC as a corporation, not as a receiver, the complaint fails to state a claim upon which relief can be granted.  See Mot. of the Def. Federal Deposit Insurance Corporation to Dismiss ("FDIC Mot.").  Beckley has also filed a motion to dismiss, asserting that:  (1) "specific performance of a contract will not lie against a non-party to that contract;"

4

and (2) in the alternative, if the guaranty and the alleged release contract are deemed to be part of the same agreement, the plaintiff's action against Beckley is barred because she failed to raise it as a compulsory counterclaim in Beckley's earlier action against the DiGeronimo estate. See Mot. of Beckley Capital Ltd. Partnership to Dismiss, at 2 ("Beckley Mot."). The court will discuss these arguments seriatim.

## Discussion

### I. Defendant FDIC

As a preliminary issue, the court notes that the plaintiff has failed to identify whether the action is brought against the FDIC in its receiver capacity or its corporate capacity. See ABI Inv. Group v. FDIC, 860 F. Supp. 911, 915 (D.N.H. 1994) ("The FDIC generally functions in two separate and distinct legal capacities."). Moreover, the plaintiff has failed to respond to: (1) the FDIC's assertion that the plaintiff's action is against the FDIC in its receivership capacity; or (2) the FDIC's argument in its corporate capacity in support of its motion to dismiss. "In its corporate capacity, the FDIC insures deposits in federally insured depository institutions. . . . In its receivership capacity, the FDIC 'marshall[s] the insolvent bank's assets and distributes them to the bank's creditors and

5

shareholders.'" <u>Id.</u> (citations omitted) (quoting <u>Branch v. FDIC</u>, 825 F. Supp. 384, 391 (D. Mass. 1993)). In light of the nature of the plaintiff's claim, the plaintiff's arguments, and the plaintiff's failure to contest the FDIC's characterization of her claim, the court determines that the claim was indeed asserted against the FDIC in its receivership capacity.

The FDIC moves to dismiss the plaintiff's cause of action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) challenges the statutory or constitutional power of the court to adjudicate a particular case. James William Moore et al., 2 <u>Moore's Federal Practice</u> § 12.30[1] (3d ed. 1997). The court assumes the truthfulness of the facts concerning jurisdiction as alleged by the pleadings, and the case may be dismissed only if the plaintiff fails to allege an element necessary for jurisdiction to exist. <u>Id.</u>; <u>see</u> <u>Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.</u>, 958 F.2d 15, 17 (1st Cir. 1992) (court takes factual allegations in complaint as true, indulges every reasonable inference helpful to the plaintiff's cause); <u>Palumbo v. Roberti</u>, 834 F. Supp. 46, 51 (D. Mass. 1993) (The "[c]ourt is required to view the facts in plaintiff's favor although the burden of persuasion as to jurisdiction rests with

6

[the] plaintiff."). However, the court is not required to adopt the legal conclusions alleged by the plaintiff. <u>See</u> <u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 16 (1st Cir. 1989) (It is "only when such conclusions are logically compelled, or at least supported by the stated facts . . . that 'conclusions' become 'facts' for pleading purposes.").

In 12 U.S.C. § 1821(d)(13)(D), Congress created a general jurisdictional bar that prevents any court from hearing claims against, or actions to determine the rights regarding, assets of a failed institution which is being administered by the FDIC:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over-
>
> (i) any claim or action for payment from, or any action seeking the determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C.A. § 1821(d)(13)(D) (West 1989). "[F]ederal courts are [therefore] barred from asserting jurisdiction over claims against the assets of failed depository institutions except as expressly or impliedly permitted," <u>Lloyd</u>, 22 F.3d 335, 337 (1st Cir. 1994), or from asserting jurisdiction over claims where the

7

plaintiff is "seeking the determination of rights with respect to . . . the assets of [a] depository institution," 12 U.S.C. § 1821(d)(13)(D)(i). Circuit courts "have broadly applied the § 1821(d) jurisdictional bar to all manner of 'claims' and 'actions seeking a determination of rights with respect to' the assets of failed banks, whether those claims and actions are by debtors, creditors, or others." Freeman v. FDIC, 56 F.3d 1394, 1401 (D.C. Cir. 1995) (quoting 12 U.S.C.A. § 1821(d)(13)(d)(i)); see also Lloyd, 22 F.3d at 337; Marquis v. FDIC, 965 F.2d 1148, 1152 (1st Cir. 1992).

The plaintiff asserts a number of arguments in support of her contention that § 1821(d) does not bar the court's jurisdiction in this case. First, the plaintiff argues that the court's jurisdiction is not barred because the plaintiff's action, if successful, does not state a 'claim' that "would require satisfaction out of the assets of a failed bank." Pl.'s Objection to FDIC's Mot. to Dismiss, at 5, 6 ("Pl.'s FDIC Obj."). However, the simple fact that the plaintiff's claim would not require payment from the assets of the failed bank does not remove § 1821's jurisdictional bar. The claim would still require a determination of the rights of the parties to an asset of the bank. See, e.g., Lloyd, 22 F.3d at 337 ("equitable reformation and/or cancellation of the contract fare no better"

8

under § 1821(d)(13)(D) where plaintiff sought cancellation of promissory note).

The plaintiff next argues that DiGeronimo's personal guaranty was already released by the FDIC. Therefore, "[t]o the extent the Guaranty is considered an asset of the bank, the rights and obligations with respect to that Guaranty were determined over three years ago" when the FDIC agreed to a release. Pl.'s FDIC Obj. at 6. As a consequence, the plaintiff argues, she is seeking "not a determination of rights with respect to the Guaranty, but rather a piece of paper to document the release already effectuated." Id. at 7. In short, the plaintiff merely seeks an order directing the FDIC to perform a "simple ministerial act." Id. at 8.

The plaintiff's argument belies what an order from the court that compelled the FDIC "to specifically perform in accordance with the [release] and to deliver the written discharge and release of Mr. DiGeronimo's personal liability" would require this court to determine. Compl. at 5. For the court to order the FDIC to issue a release of DiGeronimo's guaranty, the court would have to determine that such a release was due, and therefore it would have to find that the FDIC actually released DiGeronimo. That this determination is inherent in such an order is evidenced by the plaintiff's extended discussion regarding the

9

validity of the alleged release.  See Pl.'s FDIC Obj. at 6-8.  A finding that the FDIC did indeed release DiGeronimo's guaranty necessarily involves "a determination of rights with respect to . . . the assets" of the failed bank for which the FDIC has been appointed receiver.  See 12 U.S.C.A. § 1821(d)(13)(D)(i).

The plaintiff's reliance on Homeland Stores Inc. v. RTC, 17 F.3d 1269 (10th Cir. 1994), for the proposition that the claim amounts to a simple ministerial act and therefore survives § 1821's bar is misplaced.  At issue in Homeland was whether or not the physical property of an asset was being maintained, and whether leasing one portion of the property to a particular tenant violated another tenant's lease.  See id. at 1270, 1271.  In Homeland, the Tenth Circuit was addressing a claim "which [arose] due to RTC action in managing an institutional asset after an institution [entered] receivership."  Id. at 1272.  In the case at hand the court is asked to order the FDIC to issue a release of DiGeronimo's guaranty; in effect, the court is asked to determine the validity of the alleged release and the parties' rights to the asset of the guaranty.  This is expressly precluded under § 1821, and presents a very different situation from that in Homeland.

The plaintiff next asserts that the FDIC's failure to follow the procedural requirements for giving notice to the plaintiff

10

renders the jurisdictional bar of § 1821(d)(13)(D) null and void. See Pl.'s FDIC Obj. at 8 ("It is fundamentally unjust for the FDIC to request the dismissal of plaintiff's claim for an alleged failure to comply with administrative procedure when the FDIC, itself, failed to comply with the provisions of the very same statute. The FDIC must establish that it complied with the notice requirement in 12 U.S.C. § 1821 before it can take advantage of the bar against claims.").

The plaintiff has provided no authority for its proposition, and the court finds this argument to be without merit. Although section 12 U.S.C. § 1821(d)(3)(C) does require that notice be sent to creditors, the drafters anticipated that the FDIC will on occasion fail to send notice to a creditor. 12 U.S.C. § 1821 (d)(5)(C)(ii) provides for this possibility by permitting an extension of the relevant time limitations and thereby allowing overlooked creditors who otherwise lack notice an opportunity to file their claims in the administrative claims procedure. See 12 U.S.C.A. § 1821 (d)(5)(C)(ii) (West 1989). Indeed, the plaintiff acknowledges that the FDIC has sent the required notice, although it was late. See Compl. at 8. The court is unaware of any authority for the proposition that the jurisdictional bar of § 1821(d)(13)(D) can be negated when the FDIC is late in sending notice to a creditor.

11

The court concludes that the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D) applies to the plaintiff's claims in this case. The plaintiff has failed allege that the claim falls within one of the exceptions to § 1821(d)(13)(D)'s jurisdictional bar, and the court concludes therefore that it lacks subject matter jurisdiction over the plaintiff's claim against the FDIC.[2]

II. <u>Beckley</u>

Beckley seeks to have the plaintiff's action dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) on two alternate theories. Beckley first argues that it is not bound by the release if the release and the guaranty are considered two separate contracts, as Beckley was assigned only the FDIC's rights under the guaranty, not under the release. <u>See</u> Beckley Mot. at 2 ("[S]pecific performance of a contract will not lie against a non-party to that contract."). Alternatively, Beckley argues that if the release and the guaranty are deemed part of the same contract or transaction, the plaintiff's claim against Beckley is precluded as it had to have been asserted as a counterclaim in Beckley's earlier action against the DiGeronimo estate. <u>See</u> Beckley Mot. at 2.

---

[2]In light of its conclusion, the court need not address the FDIC's remaining arguments.

Because Beckley has already filed an answer to the plaintiff's complaint, the pleadings have closed under Fed. R. Civ. P. 7(a). As such, the court will treat the defendant's motion to dismiss as a motion for judgment on the pleadings. See Fed. R. Civ. P. 12(c). Pursuant to Fed. R. Civ. P. 12(c), a motion for judgment on the pleadings will be granted if, accepting all of the plaintiff's factual averments contained in the complaint as true, and drawing every reasonable inference helpful to the plaintiff's cause, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988).

The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule 12(b)(6) motion. See Republic Steel Corp. v. Pennsylvania Eng'g Corp., 785 F.2d 174, 182 (7th Cir. 1986). In both cases, the court's inquiry is a limited one, focusing not on "whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (motion to dismiss under Fed. R. Civ. P. 12(b)(6)). In making its inquiry, the court must accept all of the factual averments contained in the complaint as true, and draw every reasonable inference in favor

13

of the plaintiff.  See Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992) (Rule 12(b)(6) motion); Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991) (Rule 12(c) motion).  In the end, the court may grant a motion to dismiss under Rule 12(b)(6) "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'"  Garita, 958 F.2d at 17 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

> Federal Rule of Civil Procedure 13(a) provides that:
>
> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Fed. R Civ P. 13(a) (West 1997).  Pursuant to Rule 13(a) and the principles of claim preclusion, "'"a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."'"  Puerto Rico Maritime Shipping Auth. v. Federal Maritime Comm'n, 75 F.3d 63, 66 (1st Cir. 1996) (quoting Manego v. Orleans Bd. of Trade, 773 F.2d 1, 5 (1st Cir. 1985) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980))).  Moreover, characterizing a claim in a current action as an affirmative

14

defense in a prior action will not defeat the "required joinder of compulsory counterclaims [because it] is designed to prevent parties from hiding behind formal distinctions between defenses and counterclaims." Puerto Rico Maritime Shipping Auth., 75 F.3d at 67 (citations omitted). Therefore, where a party could have raised a claim as an affirmative defense in an earlier action, but failed to do so, that party will be precluded from relitigating the claim in a later action, assuming it arose from the same transaction or occurrence, there was identity of the parties, a final judgment was obtained, and a full and fair opportunity to litigate was provided. See id. at 66-69.

The plaintiff argues that the guaranty and the release are two separate transactions or occurrences, and that as a consequence, the plaintiff's claim in the present action did not need to be asserted in the earlier action. The plaintiff bases this argument, inter alia, on the five year time span between the execution of the note and the alleged release, and the differences in remedies sought in the two actions (monetary damages v. equitable relief). See Pl.'s Obj. to Mot. of Beckley Capital Ltd. Partnership to Dismiss, at 8, 9 ("Pl.'s Beckley Obj."). The court finds the plaintiff's arguments to be wholly without merit and inconsistent with its own characterization of the alleged transactions. See Pl.'s Beckley Obj. at 4-7.

15

In determining whether a claim arises from the same transaction or occurrence, courts apply a "logical relationship test." See, e.g., Porchiro v. Prudential Ins. Co. of America, 827 F.2d 1246, 1249 (9th Cir. 1987). "This flexible approach to Rule 13 problems attempts to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Harris v. Steinem, 571 F.2d 119, 123 (2d Cir. 1978).

In the earlier action, Beckley sought to enforce the guaranty against the DiGeronimo estate. Accord and satisfaction or release, if asserted, would have been an affirmative defense of the estate.[3] Indeed, this is precisely what the estate argues in this action to secure the relief it seeks. See Pl.'s FDIC Obj. at 7 ("An accord and satisfaction, such as was reached in this case, is a new contract, substituting a new obligation for a former one, that, when satisfied, extinguished the former obligation."). Similarly, in countering Beckley's motion to dismiss, the plaintiff argues that the alleged release obtained

---

[3]Indeed, Federal Rule of Civil Procedure 8(c) required the plaintiff to assert these affirmative defenses: "In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction . . . , release . . . , and any other matter constituting an avoidance or affirmative defense." Fed. R Civ. P. 8(c) (West 1997).

was binding on Beckley because Beckley, as the assignee of the FDIC's rights under the guaranty, also was bound by the FDIC's release of the guaranty. See Pl.'s Beckley Obj. at 6, 7 ("FDIC's agreement to release DiGeronimo from personal liability was made before the Guaranty was assigned to Beckley. As such, when Beckley was assigned the Guaranty, it not only acquired all rights the FDIC may have had under the Guaranty, but all obligations the FDIC had as well.").

The court finds the plaintiff's contemporaneous arguments that: (1) Beckley was assigned not only the guaranty, but the FDIC's rights and obligations under the guaranty, including the release; and (2) the compulsory counterclaim requirement of Rule 13(a) is inapplicable because the release and guaranty are separate transactions and occurrences, to be contradictory. Accord and satisfaction and release were affirmative defenses that the plaintiff had to raise in the earlier proceedings, such that the plaintiff's claim in this case should have been asserted in the prior action as a compulsory counterclaim. The plaintiff does not dispute that this claim or defense was not raised in the prior proceedings. Nor does the plaintiff assert that she lacked a full and fair opportunity to litigate the issues in the earlier proceeding, nor that there was a third party beyond the

17

jurisdiction of the court in the earlier action.[4]  Therefore, the plaintiff is barred from bringing her claim against Beckley.

## Conclusion

The court grants the FDIC's motion to dismiss (document no. 9) as well as Beckley's motion to dismiss (document no. 8).  The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

March 23, 1998

cc:   Thomas J. Pappas, Esquire
      Steven A. Solomon, Esquire
      Frank P. Spinella Jr., Esquire

---

[4]Given the court's conclusion, it need not address the second basis for dismissal asserted by Beckley.

18