Mritunjoy SENGUPTA, Appellant,

v.

UNIVERSITY OF ALASKA, University of Alaska Fairbanks, Joan K. Wadlow, William Kauffman, Paul Eaglin, Robert H. Trent, and Sukumar Bandopadhyay, both individually and as agents and employees of the University of Alaska and University of Alaska Fairbanks, Appellees.

No. S–8515.

Supreme Court of Alaska.

April 27, 2001.

Rehearing Denied June 14, 2001.

1244

Robert A. Sparks, Fairbanks, for Appellant.

Mark E. Ashburn, Ashburn & Mason, Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

PER CURIAM.

### I. INTRODUCTION

The University of Alaska terminated Dr. Mritunjoy Sengupta from his position as a tenured professor of mining engineering. The University based its decision on the factual findings made by a hearing officer at an earlier proceeding on grievances brought by Sengupta against the University. These findings from the grievance proceeding were later accorded collateral estoppel effect in the termination proceedings. Because Sengupta failed to timely appeal the termination decision to this court, we will not examine whether the collateral estoppel doctrine was properly applied. Sengupta also sued the University, claiming that it terminated him in retaliation for constitutionally protected conduct and speech and discriminated against him on the basis of his race and national origin. Because res judicata bars Sengupta's § 1983 free speech claims, and Sengupta failed to submit evidence of discriminatory motive that would raise a genuine issue of fact regarding his § 1983 equal protection claim, we affirm the dismissal of his retaliatory termination claim.

### II. FACTS AND PROCEEDINGS

#### A. The Parrish Administrative Proceeding

Dr. Mritunjoy Sengupta is a United States citizen of Indian birth and descent. Between 1990 and 1995, he was a tenured professor of mining engineering with the School of Mineral Engineering, Department of Mining and Geological Engineering at the University of Alaska Fairbanks (UAF).

In 1992 and 1993, Sengupta brought three grievances alleging that (1) Sengupta, rather than Dr. Sukumar Bandopadhyay, should have been appointed acting head of the Mining and Geological Engineering Department; (2) Sengupta, rather· than Bandopadhyay, should have been appointed as the director of UAF's Mining and Mineral Resource Research Institute; and (3) Sengupta's salary

level was inequitable under the circumstances.

The grievance proceeding was conducted by Hearing Officer James Parrish. In his June 24, 1994 decision, Parrish recommended that each grievance be denied. In evaluating Sengupta's honesty, collegiality, and professionalism in relation to the grievance claims, Parrish specifically found that Sengupta had demeaned, degraded, and abused his colleagues; intentionally misrepresented his academic degrees; repeatedly dealt with his colleagues and the University in a dishonest manner; testified falsely under oath multiple times during the hearing; created and introduced false documents; and committed plagiarism by copying material from another University professor without proper credit. University Chancellor Joan Wadlow accepted Parrish's recommendations and denied all of Sengupta's grievances.

Chancellor Wadlow advised Sengupta that her July 12, 1994 written decision represented the University's final decision and that Sengupta could obtain further review only by appealing the decision in superior court within thirty days in accordance with Alaska Appellate Rule 602(a)(2). Sengupta did not appeal Chancellor Wadlow's decision within this time period.

### B. The Rice Administrative Proceeding

On September 1, 1994, School of Mineral Engineering Dean Robert Trent and Department Head Bandopadhyay sent Sengupta a Notice of Intent to Discharge for Cause, stating UAF's intent to initiate termination proceedings.[1] In this notice, Trent and Bandopadhyay indicated that the termination proceedings were initiated primarily on the basis of the findings of Hearing Officer Parrish in the prior grievance proceeding. After consulting with Sengupta and the School of Mineral Engineering faculty in accordance

with UAF procedures,[2] Dean Trent recommended to Chancellor Wadlow that Sengupta be discharged for cause. Chancellor Wadlow then notified Sengupta that she had accepted Dean Trent's recommendation to terminate Sengupta for cause on the basis of charges identified previously by Dean Trent and Dr. Bandopadhyay, as well as additional charges that Sengupta had violated the law. Sengupta requested a pre-termination hearing, to which he was entitled.

The pre-termination hearing, authorized by Board of Regents' (BOR) Policy Section 04.08.08 XI, was conducted on December 12, 1994, before Hearing Officer Julian Rice. In his January 17, 1995 written decision, Rice accorded collateral estoppel effect to the Parrish findings and recommended that Sengupta be terminated for cause. Relying on the Parrish findings, Rice concluded that "Dr. Sengupta's propensity for dishonest, unprofessional and disruptive behavior has been established" and that "major and substantial shortcomings ... render Dr. Sengupta's continued employment by the University detrimental to appropriate discipline and efficiency of service, including, but not limited to, neglect of contractual duties, unprofessional conduct and other conduct which interferes substantially with the continued performance of his duties." Chancellor Wadlow accepted Rice's recommendation to discharge Sengupta for cause. In her January 19, 1995 decision, she adopted nearly all of Rice's findings of fact and conclusions of law.

Sengupta subsequently exercised his right under BOR Policy 04.08.08 IX.B to appeal the chancellor's decision to University President Jerome Komisar. On January 27, 1995, President Komisar rejected Sengupta's appeal and affirmed Chancellor Wadlow's decision. President Komisar's decision represented the final University decision and Sengupta

---

1. Termination of tenured faculty is authorized by UAF Regulations for the Evaluation of Faculty Section V.B.1, which states in part: "In accordance with UAF Faculty Policies, Chapter V, tenure faculty may be terminated for the following reasons: ... d) cause." Paragraph 9 of the referenced Chapter V of UAF Faculty Policies defines "cause" as follows: "Cause shall mean some substantial shortcoming which renders continuance in employment detrimental to ap-

propriate discipline and efficiency of service. Cause shall include ... incompetency, neglect of duty, unprofessional conduct or other conduct which interferes substantially with the continued performance of duties."

2. UAF Regulations for the Evaluation of Faculty Section V.B.1.

appealed this decision to the superior court on February 23, 1995. On appeal, Superior Court Judge Jay Hodges affirmed, finding "substantial evidence to support the University's decision to terminate Dr. Sengupta for cause." Sengupta appealed Judge Hodges's decision to the Alaska Supreme Court but the appeal was dismissed as untimely.

## C. Sengupta's Grievance Alleging Retaliation

On September 9, 1994, shortly after the Notice of Intent to Discharge was issued, Sengupta filed a grievance with UAF claiming that the attempt to terminate him constituted an improper retaliation in response to his filing grievances against UAF. Chancellor Wadlow ultimately decided that Sengupta could not present his retaliation claim in a separate grievance proceeding but rather would be required to present the claim in the pending pre-termination hearing. Sengupta appealed this decision to the superior court. Judge Hodges affirmed the University's dismissal of Sengupta's grievance on August 20, 1996. Sengupta subsequently appealed to the Alaska Supreme Court but that appeal was dismissed as untimely on November 29, 1996.

## D. Sengupta's Sick Leave Request

On September 28, 1994, Sengupta requested that the pre-termination hearing be scheduled to accommodate his heightened stress level. He attached a letter from his physician detailing his health problems. On October 13 Sengupta requested that the pre-termination hearing be delayed "for about seven/eight months" due to his health problems. On October 21 Sengupta officially requested sick leave, again attaching a physician's note. Bandopadhyay responded on October 25, noting that Sengupta's current request was inadequate and that additional information was required. Sengupta failed to provide the information requested by Bandopadhyay by the November 8 deadline and the sick leave request was denied.

## E. Judicial Proceedings

On January 14, 1997, Sengupta filed a complaint against the University[3] in superior court setting forth four claims in connection with the termination of his employment, denial of his sick leave request, and alleged salary disparity. In particular, Sengupta asserted claims under 42 U.S.C. § 1983 on the grounds that UAF had violated his freedom of speech, and also that UAF had violated his right to due process, and equal protection. Sengupta also asserted a claim under 42 U.S.C. § 1981 alleging discrimination on the basis of his color and national origin. Sengupta further asserted a claim under Title VII of the Civil Rights Act of 1964,[4] alleging that UAF had violated his right to be free from employment discrimination.[5]

On March 29, 1997, Sengupta filed a second complaint against UAF in a separate action. The constitutional claims in this complaint were essentially identical to those of the earlier complaint. Sengupta added an independent cause of action to set aside certain prior final judgments as void due to alleged violations of his due process rights and UAF's alleged fraud, misrepresentations, and misconduct.

On April 24, 1997, UAF moved for summary judgment with respect to the § 1981 and § 1983 claims on the basis of collateral estoppel, res judicata, and statute of limitations. On June 23, 1997, Superior Court Judge Mary Greene granted summary judgment for UAF with respect to the § 1983 claims. Judge Greene determined that the decisions of Hearing Officer Parrish and Judge Hodges precluded the § 1983 claims challenging the termination and alleged salary disparity. Judge Greene further held that the statute of limitations barred the § 1983 claims challenging the denial of the sick leave request and the alleged salary disparity. But the § 1981 claim survived; Judge Greene determined that prior final judgments did not preclude a § 1981 racial dis-

---

3. We will refer to the numerous defendants in this case as "the University" or "UAF."

4. 42 U.S.C. § 2000e.

5. Sengupta later amended his complaint to cite the appropriate Title VII provision.

crimination claim based on a mixed motives theory challenging the termination.[6]

On June 12, 1997, UAF moved for summary judgment with respect to the independent action to set aside prior judgments. On July 29, 1997, UAF again moved for summary judgment with respect to the § 1981 mixed motives discrimination claim.

On September 8, 1997, Sengupta moved for a continuance of five to seven months under Civil Rule 56(f) to conduct additional discovery with respect to the mixed motives claims. On October 4, 1997, Judge Greene granted the Rule 56(f) continuance, allowing Sengupta until November 6, 1997, to supplement his opposition to the summary judgment motion with new factual information. Sengupta filed the supplemental opposition on November 6.

On December 10, 1997, the eve of the oral arguments on the summary judgment motions, Sengupta filed another Rule 56(f) motion, requesting additional time to conduct discovery prior to the oral arguments. Judge Greene denied the Rule 56(f) motion and heard oral arguments as scheduled on December 11. Judge Greene granted summary judgment in favor of UAF with respect to both the independent action and the mixed motives claim.

On December 22, 1997, Sengupta moved for reconsideration under Civil Rules 59 and 60(b). Judge Greene denied the motion on February 2, 1998, and did not alter the final judgment order.

On March 8, 1998, Judge Greene awarded UAF partial attorney's fees under Civil Rule 82 for defending the state law independent action claim.

Sengupta now appeals the grants of summary judgment, the award of attorney's fees, and the denials of his motions for continuance and reconsideration.

### III. STANDARDS OF REVIEW

This court reviews de novo a trial court's decision to grant summary judgment.[7] Summary judgment is appropriate only when there are no material disputed facts such that the moving party is entitled to judgment as a matter of law.[8] This court must draw all reasonable inferences in favor of Sengupta, the non-moving party.[9]

The abuse of discretion standard applies to a trial court's decision whether to permit further discovery under Rule 56(f),[10] award attorney's fees,[11] or deny relief from judgment under Rules 59 and 60.[12] This court will find an abuse of discretion only when "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling." [13]

### IV. DISCUSSION

#### A. The § 1983 Claims

Sengupta claims that the superior court erred in dismissing his § 1983 claims on June 23, 1997, on the grounds of collateral estoppel, res judicata, and statute of limitations.[14]

---

6. Sengupta's Title VII claims had previously been dismissed.

7. See Parson v. Marathon Oil Co., 960 P.2d 615, 618 (Alaska 1998).

8. See id.

9. See id.

10. See Mount Juneau Enters., Inc. v. City & Borough of Juneau, 923 P.2d 768, 773 (Alaska 1996).

11. See Osborne v. Hurst, 947 P.2d 1356, 1358 (Alaska 1997).

12. See Benedict v. Key Bank of Alaska, 916 P.2d 489, 491 (Alaska 1996); Nelson v. Jones, 781 P.2d 964, 968 (Alaska 1989).

13. Buster v. Gale, 866 P.2d 837, 841 n. 9 (Alaska 1994) (quoting Dura Corp. v. Harned, 703 P.2d 396, 409 (Alaska 1985)).

14. Sengupta also challenges the dismissal of his § 1983 claims on the grounds that the superior court improperly denied his Rule 56(f) requests for additional time to oppose this summary judgment motion. But the superior court in fact granted all continuance requests with respect to this summary judgment motion. Sengupta twice requested and the superior court twice granted extensions until a specific date. Sengupta cannot now object to the court's failure to grant longer or additional extensions. See Jennings v. State, 566 P.2d 1304, 1314 (Alaska 1977) (noting that additional Rule 56(f) relief cannot be requested for the first time on appeal). Because the superior court granted the precise relief that Sengupta requested, it did not abuse its discre-

### 1. *Statute of limitations*

The limitations period for a § 1983 claim is prescribed by the state statute of limitations for a personal injury action.[15] In Alaska, the limitations period for personal injury actions is two years.[16] A personal injury claim accrues when a party knows or should know that he has a claim, ordinarily the date the alleged injury occurs.[17] Therefore, if Sengupta knew or should have known that he had a § 1983 claim more than two years before the January 17, 1997 filing of his complaint, those claims would be barred by AS 09.10.070.

#### a. *Sick leave and salary level*

The superior court dismissed Sengupta's § 1983 claims challenging the denial of sick leave and alleged salary disparity as barred under AS 09.10.070. Sengupta challenges this decision under a continuing violation theory. Under this theory, certain patterns of discriminatory acts against the same employee can preserve a claim as timely that might otherwise be barred by the statute of limitations.[18] To benefit from the continuing violation theory, a plaintiff must first demonstrate that some discriminatory act occurred within the limitations period. The plaintiff must then show that the timely filed claim—based upon this act within the limitation period—is closely related to the otherwise time-barred claims.[19] Thus, Sengupta must demonstrate that the sick leave and salary claims are so related to the timely filed termination claim that they constitute a continuing violation.

To determine whether the claims are sufficiently related, federal circuit courts have often looked at three primary characteristics of the violations: subject matter, temporal proximity, and permanence.[20] Many courts have designated the permanence factor as the most important.[21] The "permanent" violation triggers a reasonable person's awareness of the alleged discrimination and the need to assert her rights.[22] On a subjective basis, if a plaintiff's actions show that she knew her rights had been violated by a certain point in time, the limitations period starts running from that date.[23] "The continuing violation doctrine does not exist to give a second chance to an employee who allowed a legitimate [discrimination] claim to lapse." [24]

Here Sengupta has long felt that he has suffered discrimination—certainly before January 17, 1995, the date two years before the filing of the complaint. With respect to the alleged salary disparity, Sengupta raised the discrimination issue in the grievance proceedings leading to the June 24, 1994 Parrish decision. Because Sengupta was aware of the alleged discrimination and the need to assert his rights, his claim regarding salary disparity is barred by the statute of limita-

---

tion by failing to grant additional Rule 56(f) relief.

**15.** *See Wilson v. Garcia,* 471 U.S. 261, 275, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Jenkins v. Daniels,* 751 P.2d 19, 24 (Alaska 1988).

**16.** *See* AS 09.10.070; *Jenkins,* 751 P.2d at 24.

**17.** *See Yurioff v. American Honda Motor Co., Inc.,* 803 P.2d 386, 388 (Alaska 1990).

**18.** *See, e.g., Jensen v. Frank,* 912 F.2d 517, 522–23 (1st Cir.1990); *Green v. Los Angeles County Superintendent of Schs.,* 883 F.2d 1472, 1480–81 (9th Cir.1989).

**19.** *See Green,* 883 F.2d at 1480–81.

**20.** *See West v. Philadelphia Elec. Co.,* 45 F.3d 744, 755 n. 9 (3rd Cir.1995); *Mascheroni v. Board of Regents of Univ. of Cal.,* 28 F.3d 1554, 1561 (10th Cir.1994); *Martin v. Nannie & the Newborns, Inc.,* 3 F.3d 1410, 1415 (10th Cir.

1993); *Selan v. Kiley,* 969 F.2d 560, 565 (7th Cir.1992); *Berry v. Board of Supervisors,* 715 F.2d 971, 981 (5th Cir.1983).

**21.** *See Sabree v. United Bhd. of Carpenters Local No. 33,* 921 F.2d 396, 402 (1st Cir.1990) ("the most important"); *Hendrix v. City of Yazoo City,* 911 F.2d 1102, 1104 (5th Cir.1990) ("key to the inquiry"); *Glass v. Petro–Tex Chem. Corp.,* 757 F.2d 1554, 1561 n. 5 (5th Cir.1985) ("core idea"); *Selan,* 969 F.2d at 566 n. 7 (compiling list of cases).

**22.** *See Martin,* 3 F.3d at 1415 n. 6; *Berry,* 715 F.2d at 981.

**23.** *See Conlin v. Blanchard,* 890 F.2d 811, 815 (6th Cir.1989) (filing state-law actions as evidencing knowledge of discrimination).

**24.** *Roberts v. Gadsden Mem'l Hosp.,* 835 F.2d 793, 800 (11th Cir.1988).

tions. For the same reasons, Sengupta's claim regarding the November 4, 1994 denial of sick leave is also barred.

Thus, because Sengupta perceived the alleged discrimination outside of the two-year limitations period, the superior court properly concluded that AS 09.10.070 bars his salary and sick leave claims.

### b. *Due process violation*

■ Sengupta alleges numerous procedural defects with respect to the Parrish hearing.[25] Sengupta knew of these alleged due process violations at the time of Parrish's June 24, 1994 decision and thus prior to the January 17, 1995 limitations cut-off date. Therefore, AS 09.10.070 bars Sengupta's § 1983 claims premised upon alleged due process violations in the Parrish proceedings.[26]

### 2. *The preclusive effect of the prior administrative and judicial proceedings.*

Judge Greene dismissed Sengupta's § 1983 claims challenging his termination on the basis of the preclusive effect of the Parrish findings and Judge Hodges's unappealed decision. Sengupta challenges numerous aspects of this decision.

### a. *Collateral estoppel*

■ Sengupta claims that summary judgment was improper because Judge Greene erroneously accorded collateral estoppel effect to the Parrish findings. Collateral estoppel, or issue preclusion, bars the relitigation of an issue where:

25. Sengupta primarily alleges that (1) Parrish was not properly appointed as a hearing officer; (2) Parrish was biased against Sengupta; and (3) Sengupta was unfairly surprised by the issues raised at the Parrish hearings.

26. Although the superior court dismissed Sengupta's § 1983 due process claims on collateral estoppel and res judicata grounds, we may affirm the decision on any basis. *See John v. Baker,* 982 P.2d 738, 746 n. 28 (Alaska 1999).

27. *Renwick v. State, Bd. of Marine Pilots,* 971 P.2d 631, 634 (Alaska 1999); *see also Jackinsky v. Jackinsky,* 894 P.2d 650, 654 (Alaska 1995).

(1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment.[27]

If these criteria are met, collateral estoppel would properly apply to the issues litigated before and decided by Parrish, Rice, and Judge Hodges.[28]

■ Sengupta raised objections to the application of collateral estoppel to the Parrish findings before both Rice and Judge Hodges. Rice rejected these objections and accorded collateral estoppel effect to the Parrish findings. Judge Hodges affirmed Rice's application of collateral estoppel in Sengupta's appeal of his termination. Because Sengupta failed to timely appeal Judge Hodges's decision, Sengupta may not now object to the application of collateral estoppel to the Parrish findings in the termination context of the present case.[29]

■ Furthermore, collateral estoppel precludes Sengupta's § 1983 claims premised upon a lack of due process before Hearing Officer Rice. Judge Hodges determined that Sengupta had been afforded due process in his pre-termination proceedings before Rice. Because the prerequisites for collateral estoppel are present, this unappealed finding precludes Sengupta from relitigating the due process issue with respect to the Rice pro-

28. *See Diedrich v. City of Ketchikan,* 805 P.2d 362, 369–70 (Alaska 1991); *see also Johnson v. Alaska State Dep't of Fish & Game,* 836 P.2d 896, 908–09 (Alaska 1991).

29. This analysis would not apply if the amount at stake in the present case differed substantially from that in the Rice/Hodges proceedings. *See* Restatement (Second) of Judgments § 28(5) (1982). But because both the present and prior actions contest Sengupta's termination, the amount at stake is the same and Sengupta had adequate incentive to litigate the collateral estoppel issue to the fullest extent in the prior action before Hearing Officer Rice and Judge Hodges.

ceedings.[30]

### b. *Res judicata*

Sengupta also challenges the res judicata effect of Judge Hodges's decision. The doctrine of res judicata provides that a judgment in a prior action will bar a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action.[31] It is not disputed that Judge Hodges's decision was a final judgment on the merits, from a court of competent jurisdiction, in a dispute between the same parties. Hence, the critical question is whether the current and the earlier dispute are about the same "cause of action."

We have not previously decided what constitutes a "cause of action" when a defendant who could, but does not, interpose a counterclaim in one proceeding subsequently seeks to maintain a separate action on that claim.[32] Had the plaintiff failed to bring a claim in the original proceeding, any subsequent claim arising from the same transaction would clearly be barred by res judicata.[33] To apply the same rule to a defendant's foregone counterclaim, however, would require the defendant "to assert his claim in the forum or proceeding chosen by the plaintiff ... [rather than being] allowed to bring

suit at a time and place of his own selection."[34] To protect the defendant's right to choose his or her own forum for suit, the Restatement (Second) of Judgments § 22(2) provides that a defendant will only be barred from bringing a foregone counterclaim as a claim in a subsequent proceeding if:

> (a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or

> (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.[35]

Under ordinary circumstances, Restatement § 22(2) adds little to the preclusive effect of Civil Rule 13(a)'s compulsory counterclaim provision.[36] It was not the Civil Rules that governed Sengupta's administrative hearing, however, but Board of Regents' Policy 04.08.08. That policy "afforded [the defendant employee] an opportunity to present testimony and other evidence as to why the action should not be taken," but did not *require* the defendant to raise any counterclaims. Sengupta's appeal to superior court, similarly, was governed not by the Civil Rules, but by the Rules of Appellate Proce-

**30.** *See Diedrich,* 805 P.2d at 369–70.

**31.** *See Plumber v. University of Alaska Anchorage,* 936 P.2d 163, 166 (Alaska 1997).

**32.** *See Andrews v. Wade & De Young, Inc., P.C.,* 950 P.2d 574, 579 (Alaska 1997) (hereinafter *Andrews II*) (declining to reach this issue).

**33.** *See DeNardo v. State,* 740 P.2d 453, 456 (Alaska 1987).

**34.** Restatement (Second) of Judgments § 22 cmt. a (1982).

**35.** Restatement (Second) of Judgments § 22(2) (1982). While Restatement § 22(2)(a) is embodied in rules like Alaska Civil Rule 13(a), we have not explicitly adopted that subsection of the Restatement. *See Andrews II,* 950 P.2d at 579. The heart of § 22(2)(b) is, however, incorporated in the precedential basis of this court's res judicata jurisprudence. *See Plumber,* 936 P.2d at 166 (res judicata applies only in dispute involving the

same "cause of action") (citing *Blake v. Gilbert,* 702 P.2d 631, 634–35 (Alaska 1985)), *overruled on other grounds by Bibo v. Jeffrey's Restaurant,* 770 P.2d 290, 295 (Alaska 1989) (citing *Weston Funding Corp. v. Lafayette Towers, Inc.,* 410 F.Supp. 980, 983 n. 4 (S.D.N.Y.1976)) (citing *Herendeen v. Champion Int'l Corp.,* 525 F.2d 130, 133 (2d Cir.1975)) ("The test for determining whether causes of action are the same for purposes of res judicata has been variously expressed. Most frequently cited as the relevant criteria ... are whether *a different judgment in the second action would impair or destroy rights or interests established by the judgment entered in the first action,* whether the same evidence is necessary to maintain the second cause of action as was required in the first, and whether the essential facts and issues in the second were present in the first." (emphasis added)).

**36.** *See Andrews v. Wade & De Young, Inc., P.C.,* 875 P.2d 89, 91 (Alaska 1994) (hereinafter *Andrews I*) ("Failure to assert a compulsory counterclaim bars a party from bringing a later independent action on that claim.").

dure.[37] Absent the grant of a trial de novo, the Appellate Rules do not adopt Civil Rule 13(a)'s compulsory counterclaim provision.[38] In the absence of a "compulsory counterclaim statute or rule," Sengupta's attempt to assert his foregone counterclaim in a new action will only be barred if "[t]he relationship between the counterclaim and the [original] plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." [39]

In *Lee v. City of Peoria*,[40] the Seventh Circuit applied Restatement § 22(2)(b)'s common law compulsory counterclaim provision to bar the claims of a plaintiff in a position much like Sengupta's. Lee, a police officer, was discharged by the Board of Fire and Police Commissioners for giving false testimony.[41] In defending himself before the Board, Lee argued only that his testimony had been true.[42] In his appeal of the Board's decision to state court, however, Lee claimed that his discharge was the result of racial discrimination.[43] After his appeal was denied, Lee filed a claim of racial discrimination in federal court.[44] The Seventh Circuit noted that Lee's allegation of racial discrimination, if established, would have been a complete defense in his termination hearing.[45] Relying on Restatement § 22(2)(b) as an alternative basis for its holding, the Seventh Circuit held that because Lee's claim of racial discrimination, if successful, would directly undermine both the right of the city to discharge him and the validity of the state court's decision, res judicata would bar Lee from subsequently raising that claim in federal court even if Lee had not presented a counterclaim alleging racial discrimination in the original action.[46]

Because the factual basis of Sengupta's First Amendment claims is closely tied to the factual basis of his termination hearing, Sengupta probably would have been permitted to present his First Amendment claims as counterclaims in the pre-termination hearing, just as he was permitted to present his retaliation grievance in that proceeding. The University's decision to terminate Sengupta was based, in part, upon his intentionally untruthful conduct: (1) "in the writing of a letter concerning the licensing of Professors of Mining Engineering"; (2) "in reporting Dr. Speck had 'secretly removed' a purchase order from the purchasing files"; and (3) "in testifying concerning a 'Las Vegas video.'" In the current action, Sengupta now claims that the University violated his First Amendment rights by retaliating against him for making these statements, and that his termination was illegitimately motivated by the University's opposition to his protected speech on these issues. If Sengupta were able to establish that the First Amendment barred the University from relying upon the disputed statements in the pre-termination hearing, his successful prosecution of that claim would impair the University's right to have terminated him on the basis of those statements. Sengupta's claim is thus barred by Restatement § 22(2)(b), because the "successful prosecution of [his claim] . . . would impair rights established in the initial action."

◼ Sengupta's First Amendment claims would also be barred even if he had only been permitted to bring them as defenses, rather than counterclaims, in the original action. When a defendant fails to interpose a defense to a plaintiff's original action, Restatement § 22(2)(b) bars the defendant from relying on the facts of that defense to bring a separate action against the original plaintiff if "[t]he relationship between the [subsequent claim] and the plaintiff's claim is such that successful prosecution of the second ac-

**37.** *See* Alaska R.App. P. 601.

**38.** *See* Alaska R.App. P. 601–12.

**39.** Restatement (Second) of Judgments § 22(2)(b) (1982).

**40.** 685 F.2d 196 (7th Cir.1982).

**41.** *See id.* at 197.

**42.** *See id.*

**43.** *See id.*

**44.** *See id.*

**45.** *See id.* at 200.

**46.** *See id.* at 200–01.

tion would nullify the initial judgment or would impair rights established in the initial action."[47]

As the First Circuit has suggested, Restatement § 22(2)(b)'s application to both foregone counterclaims and foregone defenses prevents parties from avoiding the preclusive effect of a foregone counterclaim by denominating it a defense.[48] Even if the defendant in the original proceeding is not *permitted* to bring a counterclaim, res judicata will still bar the subsequent assertion of that claim if it could have been raised by way of defense in the original proceeding and could have provided the same relief if raised.[49] Assuming certain remedies were not *immediately* available to Sengupta in the administrative proceeding, success in proving a constitutional violation at the pre-termination hearing would have allowed him to seek those remedies in a subsequent § 1983 suit.[50] Therefore, if Sengupta had been barred from presenting his First Amendment claim as a counterclaim, his subsequent claim would still be barred because he could have presented it as a defense.[51]

Sengupta's claim arises out of the same cause of action as his foregone counterclaim or defense. But, "[i]t is a well-established principle that no decision may consti-

tute res judicata if the party against whom it is asserted has not had a full and fair opportunity to litigate his claims."[52] We must therefore determine whether Sengupta had a "full and fair opportunity" to litigate his counterclaim, or defense, in the earlier proceeding. In *Eilrich v. Remas*, the Ninth Circuit held that the plaintiff "clearly" had a full and fair opportunity to litigate his First Amendment claim in an unreviewed administrative proceeding where

> Eilrich was afforded a 14–day proceeding resembling a trial, documented by an eleven-volume transcript.... [B]oth sides were entitled to call, examine and cross-examine witnesses under oath or affirmation. At the hearing, both parties were represented by counsel, twenty-one sworn witnesses testified, subpoenas were issued, and both parties presented oral argument and written memoranda. Both sides briefed the first amendment issue, the hearing officer considered these arguments and applied the appropriate legal standards to the facts surrounding Eilrich's statements and discharge.[53]

We followed the Ninth Circuit's reasoning in *Eilrich* in *Diedrich v. City of Ketchikan.*[54] Moreover, we have held that appellate review provides a plaintiff with an even fuller and

---

**47.** Restatement (Second) of Judgments § 22(2)(b) (1982). *See also Lee*, 685 F.2d at 200–01 (holding that Restatement § 22(2)(b) applies similarly to foregone counterclaims and defenses).

**48.** *See Puerto Rico Maritime Shipping Auth. v. Federal Maritime Comm'n*, 75 F.3d 63, 67 (1st Cir.1996).

**49.** *See id.*

**50.** *See* Restatement (Second) of Judgments § 26(1)(c) (1982) (explaining that where the plaintiff cannot seek a certain remedy in the first action, res judicata does not bar the plaintiff from seeking that remedy in a later action). We emphasize this point. If full relief for an alleged wrong is not available through the administrative process, a party who *successfully* presses a claim (or defense) through the administrative process can subsequently bring a § 1983 action seeking whatever relief for that wrong was previously unavailable. It is only the party who *unsuccessfully* presses a claim—or who fails to present a claim, like Sengupta—who will be barred by res

judicata from seeking previously unavailable relief in a subsequent proceeding.

**51.** *See Puerto Rico Maritime Shipping Auth.*, 75 F.3d at 67.

**52.** *Pirela v. Village of North Aurora*, 935 F.2d 909, 913 (7th Cir.1991) (internal brackets, ellipses, and quotation marks omitted).

**53.** 839 F.2d 630, 634 (9th Cir.1988).

**54.** 805 P.2d 362, 369 (Alaska 1991). *See also Johnson v. Alaska State Dep't of Fish & Game*, 836 P.2d 896, 908 (Alaska 1991) (holding that essential elements of adjudication in administrative proceeding include "adequate notice to persons to be bound by the adjudication, the parties' rights to present and rebut evidence and argument, a formulation of issues of law and fact in terms of specific parties and specific transactions, a rule of finality specifying the point in the proceeding when presentations end and a final decision is rendered, and any other procedural elements necessary for a conclusive determination of the matter in question.").

fairer opportunity to litigate his constitutional claims.[55]

Because Hearing Officer Rice gave preclusive effect to the factual findings of the Parrish proceeding, whether res judicata bars Sengupta's claim arguably depends upon whether Sengupta was given a "full and fair opportunity" to litigate his claims at *both* administrative hearings. At the time the Parrish proceeding began, the University's grievance procedures were still governed by Alaska's Administrative Procedure Act (APA).[56] Sengupta was thus afforded the right to introduce exhibits, rebut the adverse evidence, and subpoena, call, examine, cross-examine, and impeach witnesses.[57] By Sengupta's own admission, the Parrish hearing "lasted almost continuously over a two month period, consisting of about *five thousand* pages of transcript, several hundred exhibits, [and] about twenty five witnesses...." Sengupta also had the right to appeal the rejection of his grievance to superior court, although he did not exercise that right.

The Rice proceeding was governed not by the APA, but rather by Board of Regents' Policy 04.08.08. That policy gave Sengupta the right to "present testimony and other evidence as to why [he should not be terminated,]" and to be represented by legal counsel or another advisor of his choice. At the pre-termination hearing, moreover, Hearing Officer Rice told Sengupta that he could "present whatever you want to"—evidence or argument—"at this time." Despite the opportunity to do so, however, Sengupta declined to present any evidence or make any substantive arguments. Sengupta did, however, exercise his right to appeal his termination to the superior court.

In both the Parrish and Rice proceedings, then, Sengupta was afforded an opportunity to be heard similar to the "full and fair opportunity" approved of in *Eilrich.* An additional opportunity to be heard was provided by Sengupta's right of appeal to the superior court, a right he exercised following his termination. Unlike the plaintiff in *Eilrich,* admittedly, Sengupta's First Amendment claims were never *actually* litigated, whether in the administrative hearings or on appeal. Application of res judicata depends only upon the plaintiff having had a "full and fair *opportunity* " to litigate his claims, however, and not upon his actually having done so. Because Sengupta failed to take advantage of his full and fair opportunity to assert his First Amendment claims in the administrative hearings, he is barred by res judicata from asserting them now.

We need not consider whether res judicata barred Sengupta's § 1983 equal protection claims. In reviewing a grant of summary judgment, this court may affirm the superior court on any basis appearing in the record.[58] To raise a genuine issue of fact for a § 1983 equal protection claim, a plaintiff must submit some evidence of discriminatory motive or intent.[59] A plaintiff bears a similar burden for a § 1981 discrimination claim.[60] As discussed *infra,* Sengupta had a full opportunity to submit evidence of discriminatory motive in conjunction with his § 1981 mixed motive discrimination claim but failed to produce any such evidence. Because Sengupta had ample opportunity but failed to submit evidence of discriminatory motive that would raise a genuine issue of fact regarding his § 1983 equal protection claim, we affirm the dismissal of this claim.

In summary, we hold that the applicable statute of limitations bars Sengupta's § 1983 claims challenging the alleged salary disparity, the sick leave denial, and the procedural

---

**55.** *See Balough v. Fairbanks North Star Borough,* 995 P.2d 245, 269 (Alaska 2000).

**56.** *See* AS 44.62.330(45) (repealed by § 1 ch 30 SLA 1993).

**57.** *See* AS 44.62.430, –.460.

**58.** *See Far North Sanitation, Inc. v. Alaska Pub. Utilities Comm'n,* 825 P.2d 867, 869 n. 2 (Alaska 1992).

**59.** *See McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995); *Trautvetter v. Quick,* 916 F.2d 1140, 1150 (7th Cir.1990).

**60.** *See Gray v. City of Kansas City, Kan.,* 603 F.Supp. 872, 875 (D.Kan.1985).

aspects of the Parrish hearing. Judge Hodges's unappealed decision precludes under collateral estoppel principles Sengupta's § 1983 due process claims with respect to the Rice proceedings, as well as his challenge to the application of preclusive effect to the Parrish findings. In addition, Judge Hodges's decision bars on res judicata grounds the remaining § 1983 claims premised upon free speech violations. Finally, in the absence of any genuine issue of fact, dismissal of the § 1983 equal protection claims was proper. Thus we affirm the dismissal of each § 1983 claim.

B. *The Superior Court Properly Granted Summary Judgment on Sengupta's Independent Action to Set Aside Prior Judgments.*

 On December 11, 1997, the superior court dismissed Sengupta's independent action to set aside the prior judgments of Hearing Officer Rice and Judge Hodges terminating his employment. In granting summary judgment, Judge Greene ruled that the UAF faculty regulations in effect from 1991 to 1993—granting tenured professors the right to a pre-termination hearing before a faculty panel—did not apply to Sengupta's 1994 termination proceedings. She also ruled that under the 1989 regulations, reinstated in 1993, Sengupta had no right to a pre-termination hearing before a faculty panel. Further, she held that the nondisclosure

of the 1991 regulations did not constitute a fraud, accident, or mistake. On appeal, Sengupta argues that summary judgment was improper because genuine issues of fact existed with respect to whether UAF's failure to disclose the 1991 regulations created a fraud, accident, or mistake.[61] We reject Sengupta's contention and affirm the dismissal.

 Alaska Civil Rule 60(b) expressly reserves the power of the courts to entertain independent actions to relieve parties from judgments, and to set aside judgments for fraud upon the court.[62] The phrase "fraud upon the court" describes "conduct so egregious that it undermines the integrity of the judicial process."[63] An independent action to relieve a party from judgment is also considered "a most unusual remedy, historically available only where there was extrinsic, as opposed to intrinsic, fraud."[64] The United States Supreme Court, in a recent case also involving an alleged failure to disclose relevant information, held that relief from judgment through an independent action is available only to prevent a grave miscarriage of justice.[65]

In these rare instances, courts have granted relief from judgment where the plaintiff has demonstrated fraud, accident, or mistake as an indispensable element of the independent action claim.[66] Sengupta claims that a

---

**61.** As discussed above, Sengupta alleges several due process violations with respect to the pre-termination procedures. Judge Hodges ruled that UAF afforded a constitutionally-adequate due process hearing prior to termination. Sengupta failed to file a timely appeal on this issue and cannot relitigate the issue through an independent action claim. *See Morris v. Morris,* 908 P.2d 425, 429 (Alaska 1995) ("Civil Rule 60 is not a substitute for a party failing to file a timely appeal; nor does it allow relitigation of issues that have been resolved by the judgment.") (quoting *Burrell v. Burrell,* 696 P.2d 157, 163 (Alaska 1984)).

Sengupta also claims that the 1993 reinstatement of the 1989 regulations was invalid because the 1993 change was not approved by UAF Faculty Senate. UAF correctly asserts that Sengupta did not raise this argument at trial level. This court will not consider arguments on appeal that were not raised below unless the new issues either establish plain error or do not depend on new or controverted facts, are closely related to the appellant's arguments at trial, and could

have been gleaned from the pleadings. *See Arnett v. Baskous,* 856 P.2d 790, 791 n. 1 (Alaska 1993). These criteria are not satisfied here.

**62.** *See Stone v. Stone,* 647 P.2d 582, 586 n. 7 (Alaska 1982).

**63.** *Id.*

**64.** *Id.*

**65.** *See United States v. Beggerly,* 524 U.S. 38, 46, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) ("Independent actions must ... be reserved for those cases of injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata." (internal quotations omitted)).

**66.** *See* 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2868, at 399 (2d ed.1995); *Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.,* 117 F.3d 655, 661 (2d Cir.1997);

genuine issue of fact exists as to whether the decisions by Rice and Hodges to terminate his employment were void for fraud, accident, or mistake. As a basis for this claim, he asserts that UAF concealed from Sengupta, Hearing Officer Rice, and Judge Hodges the 1991 amendments to the UAF regulations, which permitted a pre-termination hearing before a faculty panel rather than a hearing officer.

UAF Regulations for the Evaluation of Faculty were adopted in 1989 and provided for the termination of tenured faculty members for cause. The UAF Regulations were amended in 1991 to comply with the procedural requirements of the Alaska Administrative Procedures Act (APA). Under these 1991 regulations, a terminated faculty member could appeal the termination decision to a hearing panel appointed from the University faculty.

The Board of Regents repealed the 1991 amendments in 1993, when the legislature exempted the University of Alaska from the APA, and reinstated the original 1989 regulations, effective May 26, 1993. Thus, the 1989 regulations were in effect when Sengupta's termination proceedings commenced in September 1994. Because the 1989 regulations did not provide for any pre-termination due process hearing, UAF followed the termination procedures of BOR Policy 04.08.08 XI, which did not provide for a hearing before a faculty panel, but rather afforded Sengupta a hearing before an independent hearing officer.[67] Sengupta claims he did not learn of the 1991 amendments until approximately March 1997.

Sengupta's claim of fraud, mistake, or accident implicitly assumes that the 1991 amendments applied to his termination proceedings, at least to the extent that he had the choice to use the 1991 procedures. Sengupta asserts that the repealed 1991 amendments were applicable because they were vested in his employment contract. But the amendments were not in effect either at the time he was awarded tenure or at the time termination proceedings began.

As support for his vesting argument, Sengupta only cites this passage from his 1990–1991 employment contract with UAF: "This is a tenured appointment. Other conditions of your employment are subject to UAF and BOR policies, regulations, and salary schedules currently in effect and as they may subsequently be amended." Even if such language created vested contract rights,[68] such contract rights would only exist for the 1990–1991 term of that annual employment contract.

■■■■ Sengupta was subject to the termination regulations under the employment contract in effect when the termination proceedings began;[69] Sengupta has offered no legal support for his contention that he was entitled to the application of regulations from a previous contract period. Because the 1991 amendments were repealed in May 1993, they are not applicable to Sengupta's 1994 employment contract that was in effect when termination proceedings were instituted.[70]

Moreover, Sengupta has not cited a single instance, where UAF flatly denied or otherwise affirmatively misrepresented the existence of the 1991 amendments, that could be

---

*Barrett v. Secretary of Health & Human Servs.,* 840 F.2d 1259, 1263 (6th Cir.1987).

**67.** Judge Hodges ruled that the reinstated 1989 UAF Faculty Policies and Regulations V.B.1 & 2 did not provide for a due process hearing, to which Sengupta was entitled, and that the University appropriately provided such a hearing under BOR Policy 04.08.08 XI.

**68.** *See Zuelsdorf v. University of Alaska,* 794 P.2d 932, 935 (Alaska 1990) (noting that employment relationship between *nontenured* professor and university is created by contract and governed by contract law).

**69.** *See, e.g., Koch v. Board of Trustees of Univ. of Ill.,* 39 Ill.App.2d 51, 187 N.E.2d 340, 343 (1962); *Keiser v. State Bd. of Regents of Higher Educ.,* 193 Mont. 35, 630 P.2d 194, 198 (1981); *State ex rel. Keeney v. Ayers,* 108 Mont. 547, 92 P.2d 306, 310 (1939); *Nostrand v. Little,* 58 Wash.2d 111, 361 P.2d 551, 563 (1961).

**70.** This contract contained a provision similar to that cited by Sengupta: "This appointment and other conditions of employment are subject to the policies of the Board of Regents and University rules and regulations as they presently exist and as they may be duly amended or promulgated."

construed as fraud. And Sengupta never requested copies of repealed procedures. Thus, we agree with Judge Hodges's conclusion that "[t]he University supplied Sengupta and his counsel with copies of the applicable regulations in effect during Sengupta's termination process" and that "University employees had no obligation to provide Sengupta with copies of repealed regulations without a specific request for them."

■ Finally, Sengupta claims that the 1989 date printed on the UAF Regulations for the Evaluation of Faculty constitutes a misrepresentation. This meager evidence does not warrant the extraordinary remedy of overturning a final judgment.[71]

In sum, Sengupta has not demonstrated a genuine issue of fact as to whether he was entitled to the pre-termination hearing before a faculty panel as provided in the 1991 amendments. Mere nondisclosure of inapplicable regulations does not constitute fraud, mistake, or accident. We therefore affirm the dismissal of Sengupta's independent action claim.

C. *The Superior Court Properly Granted Summary Judgment on Sengupta's Mixed Motives Termination Claims Under Title VII and § 1981.*

　1. *Sengupta failed to meet his threshold burden.*

On June 23, 1997, the superior court dismissed all claims from Sengupta's original complaint except for the § 1981 claim based on mixed motives discrimination with respect to the termination. On September 12, 1997, the superior court permitted Sengupta to add a Title VII claim alleging discrimination based on race, national origin, or prior EEOC activity.[72] On December 11, 1997, the superior court granted summary judgment in favor of UAF with respect to Sengupta's mixed motives discrimination claims. On appeal, Sengupta claims that this summary judgment grant was in error.

■ As an initial matter, § 1981 employment discrimination claims are generally analyzed in the same manner as Title VII claims.[73] To prove an employment discrimination claim, the plaintiff must assert either that the employer's challenged decision stemmed from a single, illegitimate motive (a "pretext" case) or that the decision was the product of both legitimate and illegitimate motives (a "mixed motives" case).[74] In order to survive summary judgment in a mixed motives case, the plaintiff must demonstrate "that it is more likely than not that a protected characteristic played a motivating part" in the employment decision.[75]

The superior court held that, under *Cram v. Lamson & Sessions Co.*,[76] Sengupta failed to meet his threshold evidentiary burden. Sengupta claims that the superior court incorrectly required direct evidence and that the evidence presented raises a genuine issue of fact sufficient to avoid summary judgment. We reject both claims.

The Supreme Court's decision in *Price*

---

71. *See Beggerly*, 524 U.S. at 46, 118 S.Ct. 1862.

72. Sengupta had filed a complaint with the Alaska State Commission for Human Rights and the EEOC on June 24, 1994, alleging that UAF discriminated against him on the basis of color and national origin.

73. *See Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 176 (7th Cir.1996); *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 504 n. 4 (9th Cir. 1989).

74. *See Sischo–Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1109 (9th Cir.1991) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–48, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).
　Sengupta cites a number of opinions that pertain to pretext cases. As the Ninth Circuit has noted, the approach to the two types of cases is "somewhat different." *Washington v. Garrett*, 10 F.3d 1421, 1432 n. 15 (9th Cir.1993). The superior court rejected a pretext claim and Sengupta does not challenge the preclusion of the pretext theory. Thus, we will not address that issue.

75. *Reyes v. Atlantic Richfield Co.*, 12 F.3d 1464, 1471 (9th Cir.1993) (quoting *Sischo–Nownejad*, 934 F.2d at 1110); *see also Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 471 (8th Cir.1995) ("Under *Price Waterhouse*, plaintiff carries the threshold burden of showing that an illegitimate criterion was a motivating factor in the employer's decision to terminate her employment.").

76. 49 F.3d 466 (8th Cir.1995).

*Waterhouse v. Hopkins*[77] has created some confusion among the federal courts as to whether "direct" evidence is required to meet the plaintiff's threshold burden. Several federal circuit courts have concluded that circumstantial or inferential evidence may be presented to sustain the plaintiff's burden.[78] Other courts have interpreted *Price Waterhouse* to mean that a plaintiff must produce non-circumstantial or non-inferential evidence.[79] The principal mixed motives cases relied upon by Sengupta (*Thomas*[80]) and UAF (*Cram*[81]) both approve of using circumstantial evidence.[82]

 We have permitted the use of circumstantial evidence in pretext cases,[83] and we now hold that a plaintiff may sustain his threshold burden for a mixed motives claim by presenting circumstantial evidence, as long as this evidence is directly linked to the alleged discriminatory attitude.[84] As we noted in *Haroldsen*, "it is usually impossible for an employee to directly prove that the employer acted with a discriminatory intent." [85]

 Despite Sengupta's assertions to the contrary, the superior court did not require him to produce direct evidence. Rather, the superior court followed the *Cram* analysis and explicitly permitted the use of circumstantial evidence:

> [A] prima facie case under mixed motives theory requires evidence of conduct or statements by persons involved in the decision making process that directly reflects a discriminatory attitude....
>
> The evidence may be direct or circumstantial. But particularly if circumstantial, it must be tied directly to the alleged discriminatory animus, and I find *Cram* ... to be particularly persuasive in this regard. For example as discussed in *Cram*, a plaintiff who does not show evidence of discriminatory statements or ill treatment by decision makers cannot meet the threshold burden required in a mixed motives case. A plaintiff cannot meet the threshold burden for a prima faci[e] case through circumstantial evidence connected to decision makers only through a series of inferences based on other inferences.

The superior court, after finding no direct evidence, went on to find that "Sengupta has not provided any evidence of racial or national origin animus such as derogatory remarks about employees from India." This finding appears to address the permissible type of circumstantial evidence. Sengupta is incorrect in his assertions that the superior court disallowed the use of circumstantial evidence.

 Sengupta next argues that his evidence satisfies this threshold burden. But Sengupta's evidence consists largely of his own conclusory affidavit testimony, his allegedly lower salary level, and his treatment by

---

**77.** 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

**78.** *See Thomas v. National Football League Players Ass'n*, 131 F.3d 198, 205 (D.C.Cir.1997) (citing cases); *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096 (3d Cir.1995); *Cram*, 49 F.3d at 471; *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir.1992); *White v. Federal Express Corp.*, 939 F.2d 157, 160 (4th Cir.1991); *see also EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 684 (9th Cir.1997) (citing with approval *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir.1994) for proposition that to come within *Price Waterhouse* framework the evidence "must directly reflect a discriminatory or retaliatory animus on the part of the person involved in the decisionmaking process").

**79.** *See Brown v. East Mississippi Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993); *Heim v. Utah*, 8 F.3d 1541, 1547 (10th Cir.1993); *EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir.1990).

**80.** 79 F.3d 859.

**81.** 49 F.3d 466.

**82.** *Compare Cram*, 49 F.3d at 471 ("This evidence may be direct or circumstantial, but if it is circumstantial, it must be 'tied directly to the alleged discriminatory evidence.' " (quoting *Ostrowski*, 968 F.2d at 182)), *with Thomas*, 131 F.3d at 204 (plaintiff must produce "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision" (quoting *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.1995))).

**83.** *See Haroldsen v. Omni Enters., Inc.*, 901 P.2d 426, 431 (Alaska 1995).

**84.** *See Cram*, 49 F.3d at 471; *Thomas*, 131 F.3d at 204.

**85.** 901 P.2d at 431.

Dean Trent. The cited portions of the record do not support Sengupta's assertions that he presented evidence of a discriminatory intent by Trent or Wadlow to terminate him. Nor do they support Sengupta's assertion that he was the only UAF employee terminated or disciplined for his grievance activity. Sengupta also claims that the "concealment" by UAF of the 1991 amendments was evidence of discriminatory disparate treatment. Overall, viewing the evidence in the light most favorable to Sengupta, this cited evidence does not meet his threshold burden to produce evidence of conduct or statements by persons involved in the decisionmaking process that is directly tied to the alleged discriminatory attitude.

Because Sengupta has failed to meet his threshold burden, this court affirms the dismissal of Sengupta's mixed motives discrimination claims under Title VII and § 1981.

2. *The superior court did not commit harmful error in denying Sengupta's Rule 56(f) request for a continuance to oppose UAF's motion for summary judgment.*

 Sengupta argues that the trial court abused its discretion in denying his December 10, 1997 Rule 56(f) motion for continuance.[86] Sengupta claims that he had insufficient time to adequately gather evidence to oppose UAF's summary judgment motion directed at his § 1981 mixed motives claim. In particular, Sengupta claims that

UAF had not fully complied with prior discovery requests or with the November 13, 1997 order compelling discovery, and that he needed additional time to obtain affidavits from Drs. Sharma and Afrouz. UAF contends that Sengupta's Rule 56(f) motion was properly denied because Sengupta was dilatory in conducting discovery.

 Alaska Civil Rule 56(f) permits a party opposing summary judgment to request additional time to gather and submit evidence to support the party's opposition.[87] The purpose of this rule is "to provide an additional safeguard against premature grants of summary judgment."[88] In light of this purpose, this court has held that requests made pursuant to Rule 56(f) should be freely granted.[89] To obtain Rule 56(f) relief, "a party need only provide 'adequate reasons explaining why the party cannot produce facts necessary to oppose summary judgment within the original time frame.'"[90] But if the movant has been dilatory in conducting discovery, the trial court may properly deny a Rule 56(f) motion for further discovery.[91]

Sengupta submitted a supplemental opposition brief pursuant to the superior court's earlier Rule 56(f) extension but failed to request an additional Rule 56(f) continuance at that time. Thus, any further Rule 56(f) relief cannot be based upon material discovered prior to the deadline for supplemental briefing—by then, Sengupta had five months or more to conduct discovery, take depositions,

---

**86.** Sengupta also includes in the 56(f) discussion in his opening brief a one-sentence argument that the trial court abused its discretion in limiting the scope of discovery. This argument is deemed waived for insufficient briefing. *See Adamson v. University of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal.").

**87.** *See Coulson v. Marsh & McLennan, Inc.,* 973 P.2d 1142, 1147 (Alaska 1999).

**88.** *Gamble v. Northstore Partnership,* 907 P.2d 477, 485 (Alaska 1995).

**89.** *See id.; Munn v. Bristol Bay Housing Auth.,* 777 P.2d 188, 193 (Alaska 1989); *Jennings v. State,* 566 P.2d 1304, 1313 (Alaska 1977).

**90.** *Parson v. Marathon Oil Co.,* 960 P.2d 615, 619 (Alaska 1998) (quoting *Gamble,* 907 P.2d at 485–86).

**91.** *Cf. Demmert v. Kootznoowoo, Inc.,* 960 P.2d 606, 612 (Alaska 1998) ("Where the party has not been dilatory in seeking discovery and identifies those people whom it intends to depose, it should be granted an extension under Civil Rule 56(f) to conduct discovery."). *Compare Gamble,* 907 P.2d at 486 (finding movant not dilatory where non-movant raised unanticipated affirmative defense), *with Braun v. Alaska Commercial Fishing & Agric. Bank,* 816 P.2d 140, 145 (Alaska 1991) (finding movant dilatory where movant conducted no discovery on a summary judgment issue known to movant for 13 months).

and obtain affidavits.[92] During the continuance period, Sengupta conducted only one incomplete deposition, and he did not attempt to depose any of his supervisors involved in the termination process.

On December 10, 1997, one day before oral arguments, Sengupta requested another Rule 56(f) continuance to obtain the affidavit of Dr. Andy Afrouz. But Sengupta had already offered evidence of Afrouz's claims of racial discrimination through copies of Afrouz's correspondence that Sengupta appended to his original opposition to UAF's mixed motives summary judgment motion. And Sengupta cites no reason—apart from Afrouz's failure to return Sengupta's calls—for his inability to obtain Afrouz's signed affidavit in a timely fashion. Thus, Sengupta could not properly request in his December 10 motion additional time to obtain further testimony of Afrouz.

■ Additionally, Sengupta argues that, because the superior court granted his motion to compel production of documents on November 13, after the November 6 close of the initial Rule 56(f) extension period, material within the ambit of this order compelling discovery properly served as a basis for additional Rule 56(f) relief. But to warrant that relief, Sengupta needed to offer a discovery plan regarding evidence within the discovery order's ambit that could raise a genuine issue of material fact.[93] In his December 10 motion, Sengupta primarily argued that a continuance was warranted because UAF had failed to comply fully with the order to compel. Mere speculation that UAF withheld additional responsive documents does not warrant Rule 56(f) relief.

■ Sengupta also argues that he needed additional time to obtain the affidavit of Dr. G.D. Sharma. At first blush this argument

appears to have merit because the superior court's November 13 order compelled production of evidence regarding Sharma. Sengupta also stated in his motion that he had been able to locate Sharma in Norway only because of documents belatedly produced by UAF. By the time Sengupta was able to obtain Sharma's signed and notarized affidavit, the continuance period had closed.

After examining the new information contained in Sharma's late-filed affidavit,[94] we conclude that any error in denying the continuance to obtain Sharma's affidavit would be harmless because this evidence does not sustain Sengupta's threshold burden under *Cram*.[95] Sharma filed and ultimately settled racial discrimination charges against the University of Alaska, but these events occurred in 1976, twenty years before Sengupta's claims of discrimination. Apart from these events in the mid–1970s, Sharma's affidavit merely presents evidence of faculty discord with no correlation to racial animosity. Conclusory statements that UAF discriminated against Sharma do not raise a genuine issue of fact with respect to Sengupta's present claim.[96]

Because the superior court committed no harmful error in denying Sengupta additional Rule 56(f) relief, we affirm the superior court's denial of Sengupta's second Rule 56(f) motion.

D. *The Superior Court Did Not Err in Denying Sengupta's Motion Under Rules 59 and 60 to Amend the Judgment of Dismissal.*

■ On December 22, 1997, Sengupta filed a motion under Rules 59 and 60(b) requesting reconsideration of the December

---

92. UAF first challenged the mixed motives claim by summary judgment motion on April 24, 1997. UAF moved for summary judgment with respect to the independent action on June 12, 1997. Sengupta submitted his supplemental brief on the November 6, 1997 deadline.

93. *See Glover v. Western Air Lines, Inc.,* 745 P.2d 1365, 1371 (Alaska 1987).

94. Sengupta had previously submitted factual information regarding Sharma in Sengupta's August 17, 1997 affidavit.

95. *See Coulson,* 973 P.2d at 1147 (finding any error in denying Rule 56(f) relief harmless where additional evidence would not raise a genuine issue of fact).

96. Sengupta cites several cases purporting to support the proposition that such evidence is relevant, and thus admissible, in pretext claims. These cases are not germane to whether such evidence, even if admissible, raises a genuine issue of fact in a mixed motives case.

11, 1997 grant of summary judgment dismissing his mixed motives discrimination and independent action claims. The superior court denied the motion on January 15, 1998.[97] Sengupta argues that the trial court abused its discretion by failing to grant him relief under Rules 59 and 60(b) because he submitted newly discovered evidence—the affidavits of Sharma and Afrouz—that raises a genuine issue of material fact.[98]

This court analyzes motions based on newly discovered evidence under the standard established by *Montgomery Ward v. Thomas*.[99] The *Montgomery Ward* analysis applies to motions made under either Rule 59 or Rule 60(b)(2).[100] In addition, the *Montgomery Ward* standard applies to motions challenging not only judgments entered after trial but also summary judgments.[101]

■ Under the *Montgomery Ward* standard, to warrant relief under either Rule 59 or Rule 60(b)(2), the newly discovered evidence "must (1) be likely to change the result on a new trial; (2) have been discovered after trial; (3) not have been discoverable, with due diligence, before trial; (4) be material; and (5) not be cumulative or impeaching."[102]

To meet the first *Montgomery Ward* criterion in the context of a summary judgment challenge, the newly discovered evidence must raise a genuine issue of material fact. As we noted *supra*, the signed affidavits of Sharma and Afrouz do not raise a genuine issue of fact in the context of the mixed motives claim.[103] Because Sengupta fails to meet this criterion, the trial court did not err in denying him relief from summary judgment under Rule 59 or 60(b).

### E. The Superior Court Properly Awarded UAF Attorney's Fees.

The trial court awarded UAF $5,301.60 in attorney's fees pursuant to Rule 82 for defending Sengupta's state law independent action claim. Sengupta argues that attorney's fees should not be awarded because: (1) the independent action claim was so closely related to his federal civil rights claims that attorney's fees should be awarded according to the federal standard—when the losing plaintiff's claims are "frivolous, unreasonable or without merit"; and (2) UAF failed to identify the basis for segregating fees among the various matters. We reject these arguments and conclude that the trial court did not abuse its discretion in awarding attorney's fees to UAF.

97. Sengupta also requested a hearing and moved the court to reconsider its denial of the motion for reconsideration. The superior court rejected both the request for a hearing and the motion.

98. Despite its title as a motion to amend judgment, Sengupta's motion actually requests reconsideration of the dismissal of his claims upon summary judgment. Motions to reconsider are directly addressed by Rule 77. Under Rule 77(k)(1), newly discovered evidence is not a stated basis for a motion for reconsideration. However, federal courts have recognized that the federal analog of Alaska Rule 59(f) generally encompasses motions for reconsideration. *See Edward H. Bohlin Co., Inc. v. Banning Co.*, 6 F.3d 350, 353 (5th Cir.1993); 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2810.1 (2d ed.1995).

In his reply brief, Sengupta discusses other "newly discovered evidence" apart from these two affidavits. We do not address these contentions. Under Appellate Rule 212(c)(3), the reply brief "may raise no contentions not previously raised in either the appellant's or appellee's briefs." *See also Conam Alaska v. Bell Lavalin, Inc.*, 842 P.2d 148, 158 (Alaska 1992). Moreover, the sole document cited as previously un-

available evidence in the reply brief was in fact appended to Sengupta's August 17, 1997 affidavit.

99. 394 P.2d 774, 776 (Alaska 1964).

100. *Compare Dickerson v. Williams*, 956 P.2d 458, 464 (Alaska 1998) (Rule 60(b)(2) motion), *with Montgomery Ward*, 394 P.2d at 776 (new trial motion). While we have not squarely held that this analysis applies to Rule 59 motions to amend or alter the judgment, we extend this analysis to all Rule 59 motions premised upon newly discovered evidence.

101. *See Palmer v. Borg–Warner Corp.*, 838 P.2d 1243, 1247 n. 6 (Alaska 1992).

102. *Dickerson*, 956 P.2d at 467 (applying *Montgomery Ward*).

103. In addition, much of the factual information in these affidavits was not "newly discovered" because it was presented to the superior court in Sengupta's August 17, 1997 affidavit submitted in conjunction with his opposition to UAF's mixed motives summary judgment motion.

1. *The superior court did not err in awarding UAF attorney's fees without a showing that Sengupta's independent action claim was frivolous, unreasonable or without merit.*

A defendant prevailing on claims brought under federal civil rights statutes may recover attorney's fees only if the plaintiff's claims are frivolous, unreasonable, or without foundation.[104] Alaska courts apply this same standard to federal civil rights claims brought in state court.[105] Sengupta argues that this *Christiansburg/DeNardo* standard should be extended to apply to state law claims brought in state court that are integrally related to the federal civil rights claims. We reject this argument because it is directly contrary to our case law.

Sengupta's argument ignores our holding in *Lyman v. State.*[106] In *Lyman,* the trial court had awarded attorney's fees to the prevailing defendant under both federal and state law claims based upon a finding that the plaintiff's lawsuit "bordered on the frivolous."[107] On appeal, this court ruled that, under *DeNardo,* attorney's fees could only be awarded under federal civil rights statutes upon an "absolute determination" that the lawsuit was "frivolous, vexatious or brought in bad faith."[108] This court then reversed the award of attorney's fees for the federal law claims. However, based upon the same lower court finding, the court permitted the award of attorney's fees for the state law claims under Rules 79 and 82. This court did not indicate that the defendant needed to make a heightened showing above that required by Rules 79 and 82—that the defendant be a "prevailing party."

Having been awarded summary judgment, UAF is clearly a prevailing party with respect to the state law independent action claim. UAF is not additionally required to show that Sengupta's independent action to set aside prior judgments was frivolous, unreasonable, or without merit in order to win attorney's fees.

2. *The superior court did not err in concluding that UAF properly segregated and itemized its state law claim fees.*

Sengupta next argues that the award of attorney's fees is improper because UAF failed to identify the basis for segregating its fees.

But UAF attorneys adequately identified the basis of the fee segregation. UAF submitted a motion for attorney's fees under Rule 82 based on all work performed on the case. The superior court then issued an order directing UAF to "submit a pleading segregating all work done on State claims." UAF attorneys responded with an itemization of segregated fees. According to the attached affidavit of UAF attorney Mark Ashburn, the itemized fees were "charges that relate to the State claims brought by Sengupta in this case. Specifically, the charges relate to the independent action in equity brought by Sengupta to set aside the earlier final judgments entered against him." Ashburn's description sufficiently identifies the manner in which UAF segregated its fees. Because we reject Sengupta's argument that attorney's fees should be denied for failure to identify the basis for segregation, we affirm the attorney's fees award.[109]

---

**104.** *See Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

**105.** *See DeNardo v. Municipality of Anchorage,* 775 P.2d 515, 518 (Alaska 1989).

**106.** 824 P.2d 703 (Alaska 1992).

**107.** *Id.* at 707.

**108.** *Id.* at 707 n. 7.

**109.** If we interpret Sengupta's cursory argument as challenging the descriptions of the attorney work rather than the failure to provide a basis

for fee segregation, we would reject this argument as well. The prevailing party seeking attorney's fees under Rule 82 need only submit "accurate records of the hours expended and a brief description of the services reflected by those hours." *Hayes v. Xerox Corp.,* 718 P.2d 929, 939 (Alaska 1986) (cited in *Lyman,* 824 P.2d at 707–08). The *Lyman* court did not require more detailed descriptions of the attorney services when segregation was required. UAF's itemization of segregated state law claim fees contains the hours expended and short descriptions of the work performed. Thus, UAF's itemization of segregated charges was sufficient.

## V. CONCLUSION

In sum, we AFFIRM the decision of the superior court in all respects.

FABE, Justice, dissenting in part.

I agree with the court's opinion in all respects but one: I disagree that the doctrine of res judicata precludes Sengupta's free speech claim. In this claim, Sengupta alleges that he was terminated because he spoke out on issues of public importance—alleged mismanagement of his University department. Sengupta never raised this claim at the administrative proceedings. Thus, the question is whether the doctrine of res judicata precludes him from bringing his § 1983 free speech claim because he could have raised it in his administrative proceeding. Put another way, should Sengupta have been required to raise all of his constitutional claims in his administrative hearing and appeal, with the understanding that these claims would be subject to collateral estoppel if they were resolved against him? In my view, requiring him to do so is tantamount to forcing him to elect between his right to an administrative grievance procedure and appeal and his right to file a § 1983 lawsuit.

As an initial matter, it should be noted that a party need not exhaust administrative remedies before bringing a § 1983 claim in state court.[1] Therefore, a plaintiff may immediately file a § 1983 claim without first appealing the adverse administrative decision. The question before the court, then, is whether the plaintiff who chooses to grieve and appeal the agency decision is barred by res judicata principles from filing a subsequent § 1983 action for damages.

Other courts have refused to apply res judicata to bar subsequent § 1983 claims where the scope of available relief or the development of the record is limited on appeal from the administrative decision.[2] In *Davenport v. North Carolina Department of Transportation,* the Fourth Circuit Court of Appeals focused on the limited relief available to the terminated employee in refusing to apply res judicata.[3] The court recognized that, in the administrative proceedings, "the claimed wrong was a discharge without just cause from public employment in violation of statutorily protected rights, entitling [Davenport] to the remedy of reinstatement with back, and possibly front, pay."[4] In contrast, Davenport's § 1983 claim involved a deprivation of his constitutional rights under the First and Fourteenth Amendments that entitled him to the remedy of compensatory and punitive damages.[5] In concluding that res judicata did not apply, the court stated:

> Though the constitutional claims asserted in the § 1983 action could be raised by the plaintiff in the administrative hearing, their utility would be limited there to rebutting any "just cause" defense raised by the defendants.... They could not be invoked in that proceeding to provide the full range of constitutional remedies available in a § 1983 action.[6]

The Fourth Circuit Court of Appeals thus underscores the unacceptable Catch–22

---

1. See *Felder v. Casey,* 487 U.S. 131, 147, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); *Diedrich v. City of Ketchikan,* 805 P.2d 362, 368 (Alaska 1991).

2. *Accord City of North Pole v. Zabek,* 934 P.2d 1292, 1306 (Alaska 1997) (Shortell, J. pro tem., dissenting) (res judicata should not bar subsequent § 1983 claim where administrative proceedings did not permit full scope of relief or evidence admissibility); Restatement (Second) of Judgments § 26(1)(c) (stating res judicata inapplicable where "plaintiff was unable ... to seek a certain remedy or form of relief in the first action because of limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action").

3. 3 F.3d 89, 96–97 (4th Cir.1993).

4. *Id.* at 96.

5. *See id.*

6. *Id.; see also Dionne v. Mayor of Baltimore,* 40 F.3d 677, 681–82 (4th Cir.1994); *Burka v. New York City Transit Auth.,* 32 F.3d 654, 658 (2d Cir.1994) ("the resolution of whether [the constitutional] claim would be barred by res judicata turns on whether the relief sought in that action was relief obtainable in [the prior proceeding]"); *Parker v. Blauvelt Volunteer Fire Co., Inc.,* 93 N.Y.2d 343, 690 N.Y.S.2d 478, 712 N.E.2d 647 (1999) (refusing to apply res judicata where damages available under § 1983 were not available under the administrative proceedings). *But see Strickland v. City of Albuquerque,* 130 F.3d 1408, 1412 (10th Cir.1997) (applying claim preclusion, reasoning that "[t]he fact that plaintiff's [§ 1983] claims attempt to vindicate interests or obtain remedies other than those pursued or

posed by the majority's approach. If the terminated employee immediately files a separate §.1983 claim following the adverse administrative decision and foregoes the administrative grievance and appeal, the requirement of exhaustion of administrative remedies will bar the party from challenging the termination on the grounds of lack of just cause.[7] If the party appeals the termination through the administrative process, the party will not be able to obtain the full array of relief available under § 1983 for constitutional violations.

Apart from the issue of remedies, courts have also declined to apply res judicata where the plaintiff did not have a full and fair opportunity to present the constitutional claim in the administrative proceedings.[8] For example, in *State Board of Chiropractic Examiners v. Stjernholm*, the Colorado Supreme Court refused to apply res judicata where the record on appeal was developed completely at the administrative level by the defendant board.[9] The court indicated that § 1983 plaintiffs should be accorded the opportunity for "evidentiary presentation to and fact finding by" the trial court and thus did not require Stjernholm to litigate the § 1983 claim on appeal on the limited record developed before the administrative agency.[10]

Similarly, in *Smith v. Updegraff*, the Eighth Circuit Court of Appeals denied res judicata effect where the reviewing state court had limited powers on administrative appeal.[11] The state court only had the power to determine whether the civil service termination "was made in good faith and for cause" and "its review was limited to the evidence before the [agency]."[12] Because the court "could not determine the broader § 1983 claim at issue" under these appellate restrictions, the Eighth Circuit Court of Appeals concluded that, under Iowa law, res judicata would not apply to bar a subsequent § 1983 claim.[13]

I believe that the court should adopt the reasoning of *Davenport, Stjernholm,* and *Updegraff* and conclude that Judge Hodges's decision on appeal does not preclude Sengupta's subsequent § 1983 claims under principles of res judicata. Under Appellate Rule 602, Sengupta had no absolute right before Judge Hodges to supplement the administrative record[14] or to have a trial de novo to adjudicate his constitutional claims.[15] In turn, the administrative record before Judge Hodges was developed at the Rice pre-termination hearing in accordance with procedures developed by the University itself.[16] It is not apparent from the record that the University's procedural rules afforded Sengupta an adequate opportunity to litigate his § 1983 claims and seek the full range of relief, including consequential damages. Thus, Sengupta should not have been required to pursue each constitutional claim against the University in the pre-termination hearing or the subsequent administrative appeal. For this reason, I respectfully dissent from this aspect of the court's opinion.

---

made available under [state law] does not make the prior action a different 'claim' ").

7. *See Voigt v. Snowden*, 923 P.2d 778, 782–83 (Alaska 1996).

8. *See, e.g., Scroggins v. Kansas*, 802 F.2d 1289, 1292–93 (10th Cir.1986); *Huron Valley Hosp. v. City of Pontiac*, 612 F.Supp. 654, 659 (E.D.Mich. 1985), *aff'd in part on other grounds and dismissed in part*, 792 F.2d 563 (6th Cir.1986).

9. 935 P.2d 959, 967 (Colo.1997).

10. *Id.*

11. 744 F.2d 1354, 1362 (8th Cir.1984).

12. *Id.*

13. *Id.*

14. *See* Alaska R.App. P. 604(b).

15. *See* Alaska R.App. P. 609(b).

16. The University of Alaska is exempted from the procedural requirements of the Alaska Administrative Procedure Act, AS 44.62. *See* ch. 30, § 1, SLA 1993. The Board of Regents established the pre-termination procedures at issue in this case. Under Board of Regents Policy 04.08.08 XI(A), the employee has the opportunity at the pre-termination hearing "to present testimony and other evidence as to why the action should not be taken." This provision does not guarantee that an employee's constitutional rights will be adequately adjudicated.